## W. J. QUINLAN v. HOUSTON & TEXAS CENTRAL RAILWAY COMPANY

### No. 170.—Decided March 19, 1896.

**1.   Donations of Land to Railroads—Statute Construed.**

The act approved January 30, 1854, to encourage the construction of railroads in Texas by donations of land (Pasch. Dig., Arts. 4945-4957) did not apply to railway companies thereafter to be chartered. (Pp. 369, 370.)

**2.   Legislative Aid to Railroad Building.**

It was the policy of the Legislature in 1854 in granting new charters to make such provisions for the companies thereby created as should be demanded by such special conditions as should exist at the time of the grant. (P. 369.)

**3.   Case Limited.**

Railway v. Kuechler, 36 Texas, 382, overruled in so far as it held that the law of January 30, 1852, donating lands to railroads applied to railroad companies thereafter to be chartered. (Pp. 369, 370.)

**4.   Revision—Amendment.**

Section 12 of the special charter of the Waco Tap Railway Company, approved November 5, 1866, attempted to confer upon said company the benefits of the law of January 30, 1854, donating land to railway companies. Said section was in no sense a revision or amendment of said latter act. It extends the operation of that act so far as to make it apply to a company to which it did not apply before. It does not conflict with section 25, article 7, of the State Constitution then in force (Pasch. Dig., 67) prescribing that "no law shall be revised or amended by reference to its title," etc. (P. 370.)

**5.   Construction of Constitution.**

Section 25, article 7, of constitution of 1845, prescribing that "no law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length," and other similar constitutional restrictions upon the form of legislation have never been given a rigid construction. They have been held applicable to such statutes only as come within their terms when construed according to the spirit of such restrictions and in the light of the evils to be suppressed. (P. 370.)

**6.   Same—Form of Legislation.**

Section 12 of charter of the Waco Tap Railway Company, November 5, 1866, extends to it in express terms the privileges of earning lands which were granted to other railroad companies by the general law of 1854. The meaning of the section is as clear as if the provisions of the general law had been repeated. (P. 371.)

**7.   Same—Same.**

The practice of making the provisions of one statute applicable to another by a reference to the former law in the new act has been uniformly recognized as valid. (P. 371.)

**8.   Act for Relief of Railway Companies.**

The act of January 11, 1862 (Pasch. Dig., 4961) "for relief of railway companies, * * * provided said company shall complete * * * within two years after the close of the present war between the Confederate States and the United States of

America," etc., had the legal effect to continue the operation of the original law as to such companies until two years after the close of the war.  (P. 372.)

### 9.   Revival of Extinct Law.

The constitution of 1845 contained no inhibition against the revival of statutes by reference to their title.  And the section 18 of the special act incorporating the Waco Tap Railway Company, approved November 5, 1866, reviving the land grant under the act of 1854, would have been valid even if said last act had expired, so far as to entitle the road to land donation.  (P. 372.)

### 10.   Revising Expired or Repealed Law.

In the absence of any constitutional restriction a statute by a proper reference to another may incorporate in it the provisions of the former law although the former may have expired or may have been repealed.  The purpose of the later act is to revive the former, and this effect is given by the reviving act.  (P. 372.)

### 11.   Land Donations to Railway Companies—Act of November 13, 1866.

Under the act of November 13, 1866, and its charter, the Waco Tap Railway Company was granted the privilege of acquiring lands from the state;  and said legislation would be effective for that purpose had the company organized, accepted the charter and complied with its provisions.  A charter does not become a contract until accepted.  An organization is an acceptance.  (P. 373.)

### 12.   Presumption of Legality.

Land certificates granted the railway company for construction under the statutes donating lands are prima facie valid.  And from their issue the presumption arises that the Commissioner of the Land Office inquired into and found the existence of all the facts requisite to justify his action.  (Pp. 373, 374.)

### 13.   Waco Tap Railway Company—Amended Charter.

The act of August 6, 1870 (Special Laws, 1870, p. 112) amending the charter of the Waco Tap Railway Company and changing its name to that of the Waco & Northwestern Railway Company indicates that the original company had never been organized and that it was the intention to revive it and to give it a new lease of life.  The recitals, however, should not be deemed conclusive, and it was competent to prove, if it could be done, that an organization had in fact been effected before the date of the amending act, and that the rights granted in the original charter had been acquired and preserved at that date.  (P. 375.)

### 14.   Constitutional Convention of 1869—Ordinances.

A convention called to frame a constitution which is to be submitted to a popular vote for adoption cannot pass ordinances and give them validity without submitting them to the people for ratification as part of the constitution.  The constitution of 1869 called under Act of Congress of March 23, 1867 (2 Pasch. Dig., p. 1093) was not invested with the power of independent legislation.  The ordinance of the convention for relief of the Waco Tap Railway, December 11, 1868, was not valid.  (P. 376.)

### 15.   Constitutional Convention of 1866—Ordinances.

The constitutional convention of 1866 held under proclamation of President Johnson was not required to submit its action to the people for approval.  Its ordinances had the effect of law.  Grigsby v. Peak, 57 Texas, 142.  (P. 377.)

### 16.   Status of Waco Tap Railway Company.

The Waco Tap Railway Company was chartered November 5, 1866, by special act.  The charter did not expressly fix the time in which it should organize.  From provisions in the charter it is manifest that the company should be organized within two years.  August 6, 1870, near four years from date of original grant, the charter was amended.  In absence of evidence of an organization under the original act, the position of the railway company when the amendment was enacted was the same as if no charter had been granted.  The amendatory act only revived the right to form a corporation.  It provided that nothing therein should be construed to revive the land grant.  (Pp. 375 to 378.)

### 17.   Constitution of 1869 as Affecting Donations to Railways.

The constitution of 1869, section 6, article 10, prohibited land grants.  Undoubtedly this prohibited future grants.  If the Waco Tap Railway Company had never organized, the law for its creation had become a nullity and it had no existing rights to pass to the new company as its successor.  (Pp. 377, 378.)

### 18.  Waco Tap Railway Company—Legislation Amendatory in June, 1870.

The act of June 18, 1870, Laws 12th Leg., 13, attempting to legalize the ordinance of December 11, 1868, taken in connection with the amendatory act of August 6, 1868, Special Laws 112, by same Legislature does recognize the existence of the corporation,—but this may have been a mere potential existence.  It does not control the amendatory act which clearly indicates that the corporation had then no actual existence.  (P. 378.)

### 19.  Waco & Northwestern Railway Land Certificates.

The amendment to charter of the Waco Tap Railway Company, August 6, 1870, clearly indicates that the corporation had then no actual existence, and there being no testimony to an actual organization it does not appear that the land certificates issued to its successor, the Waco & Northwestern Railway Company, were valid; for which reason the judgment is reversed.  If such organization be shown on another trial, then will arise the questions (not here decided) whether section 6, article 10, of Constitution of 1869 had the effect to repeal the law granting the certificates, as also whether a failure to comply with section 13 of the original charter ipso facto forfeited the company's privilege of acquiring lands.  (P. 378.)

### 20.  Description—Sale of Privileges and Franchises.

Shirley v. Railway, 78 Texas, 131, limited; and it is an open question whether the land grant was or was not included in the deed of trust and sale by the trustees by which was sold "also all and singular the chartered rights, privileges and franchises of every kind granted to the Waco & Northwestern Railway Company by acts of the Legislature of the State of Texas which are now possessed by it, or to which it may hereafter become entitled under said acts and the laws of Texas relating to railroads."  (P. 379.)

### 21.  Deed by Directors of "Sold Out" Railway Company.

It seems that a deed, regular in form, by the directors or trustees of the Waco & Northwestern Railway Company, of its land grant, after the railway was sold out, should be treated as prima facie evidence of title in the grantee.  But such power of sale could only be exercised by the directors in office at date of sale of the franchise.  (Pp. 379, 380.)

ERROR to Court of Civil Appeals for Third District, in an appeal from Travis County.

The opinion fully states the case.

*Rector, Thompson & Rector*, for plaintiff in error.—The certificates issued for the construction of the Waco & Northwestern Railway Company from Bremond to Waco and all locations made by virtue of said certificates are void for the following reasons:

There was never a law authorizing the issuance of certificates for the construction of the Waco & Northwestern Railroad from Bremond to Waco.  This proposition is based upon the following minor propositions:  (a.) The act of January 30, 1854, was applicable alone to companies chartered before its passage.  (b.) The act of January 30, 1854, expired by its own terms ten years after the time when it took effect, or on April 14, 1864.  (c.) An act passed January 11, 1862, entitled "An Act for the relief of railroad companies incorporated for purposes of internal improvements by allowing them further time on account of the pending war," was applicable alone to companies chartered prior to the passage of the act.  (d.) An act passed the same day entitled "An Act for the relief of railway companies" was applicable alone to companies that had been chartered prior to that date.  (e.) An act passed January 11, 1862, entitled "An Act for the relief of railroad companies" did not

alter, extend or amend the law of 1854, and that to the extent to which it attempted this it was unconstitutional.    (f.) If the act of the same date entitled "An Act for the relief of railroad companies" may be considered as an independent act, making donations of land to railroad companies, that it was applicable alone to companies in existence at the time of its passage.    (g.) That if the second section of the law of January 11, 1862, "for the relief of railroad companies" was an independent act making donations of lands to railroad companies, the Waco Tap Railroad Company and the Waco & Northwestern Railroad Company were excluded under their charters from participation in its bounty by reason of the circumstance that this company or companies were given only such grants, immunities and privileges as were granted by the law of January 30, 1854, and not such immunities as might be granted by subsequent laws.    (h.) That the act of November 13, 1866, entitled "An Act for the benefit of railroads" is void for uncertainty so far as it does not attempt to revive, alter, extend or amend other laws, and so far as it does so attempt it is void because unconstitutional, as being in conflict with section 25, article 7 of the Constitution of 1845, 1861 and 1866, to the effect that no law may be revived or amended by reference to its title.    (i.) That the 18th section of "The Act to incorporate the Waco Tap Railroad Company" did not have the effect to grant or promise a donation of land to said company and did not add to nor did it take away any right the company might have had, for the reason that if the law of 1854 was not at that time in force, to give it the effect mentioned would have operated to revive that law, and if that act was in force would have operated to amend it.

If there was ever a law authorizing the issuance of certificates for the construction of the Waco & Northwestern Railroad from Bremond to Waco, there was none during the time of construction nor at the time of the issuance of the certificates, unless prior to the adoption of the Constitution of 1869 there existed a contract between the State of Texas and the Waco & Northwestern Railroad Company, or unless rights to public lands or rights to acquire public lands had vested in that company prior to the adoption of that Constitution.    This proposition is based upon the following minor propositions:    (a.) If the law of 1854 was applicable as well to companies chartered before as after its passage, still it was inoperative before November 5, 1866, the time of the passage of the law authorizing the organization of the Waco Tap Railroad Company.    (b.) If the act of January 11, 1862, was a valid law, and was applicable to all companies, whether chartered before or after its passage, it was not in force at the time of the construction of the Waco & Northwestern Railroad, for the reason that the act did not attempt more than to extend the period within which roads might be constructed two years after the termination of the Civil War, and the war in fact closed not later than June, 1865.    (c.) The effect of the adoption of the Constitution of 1869 was to repeal the law of 1854 and all other laws making donations of land to encourage railroad construction except as to vested

rights.   Railway v. State, 81 Texas, 572; Railway v. Duncan, 111 Pa. St., 352; in re Bank, 21 N. Y., 9.

There was no irrevocable contract between the State of Texas and the Waco & Northwestern Railroad Company with reference to the acquisition by the company of the lands of the State.   This proposition is based upon the following minor propositions:   (a.) The law of January 30, 1854, and all other laws which have been passed donating lands for the construction of railroads were merely bounty laws, which were repealable at the pleasure of the State.   Salt Co. v. East Saginaw, 13 Wall., 373;  Cooley, Const. Lim., 281;  Christ Church v. Philadelphia, 24 How., 300;  Brainard v. Colchester, 31 Conn., 410.   (b.) The circumstance that the benefits of the law of January 30, 1854, were extended, if extended at all, by a special provision in the act authorizing incorporation, does not change the character of the law as a general bounty law.   (c.) If there was a contract between the State and the Waco Tap Railroad Company the act of November 13, 1866, formed no part of it, inasmuch as the contract, if any, was made prior to that date, to wit, November 5, 1866.   (d.) So far as shown by the record, no contract of any kind was entered into between the State and the Waco Tap Railroad Company, for the reason that the law of November 5, 1866, entitled "An Act to incorporate the Waco Tap Railroad Company," did not purport to do more than authorize the organization of the company. There was at that time no one to contract with, and there was nothing to show that any proposition which might have been made by this act was at any time accepted or acted upon by any person or corporation. Miss. Society v. Musgrove, 44 Miss., 820.   (e.) If there was a contract between the State and the Waco Tap Railroad Company, which included an obligation on the part of the State to donate land to the company, it was not an irrevocable contract, for the reason that whatever rights were given by the State by this act, by contract or otherwise, were granted subject to all the provisions of the general railroad laws as they then existed, or as they might thereafter be altered or amended.   In addition to this, section 20 of that act is to the effect that this charter shall remain in effect fifty years unless sooner repealed or forfeited, the right to repeal any and all other privileges to arise under it being expressly reserved in that act.   The effect of retaining a right to repeal is set forth in the following cases:   Hamilton Gaslight Co. v. Hamilton, 146 U. S., 258;  Penn. Coll. Cases, 13 Wall., 190;  Greenwood v. Freight Co., 105 U. S., 13;  Tomlinson v. Jessup, 15 Wall., 454;  Railway v. Maine, 96 U. S., 499.   (f.) The act of August 6, 1870, amending certain sections of the act to incorporate the Waco Tap Railroad authorized the creation of a new company, and at this time there existed no authority in the Legislature to enter into a contract with any company or to make any change in the law, the effect of which would be the donation of land by the State.   Sinking Fund cases, 99 U. S., 700;  Railway v. Georgia, 98 U. S., 359;  Miller v. State, 15 Wall., 478;  New Jersey v. Yard, 95 U. S., 104.

There were never vested in the company rights to public lands nor rights to acquire such lands of the State. This proposition is based upon the following minor propositions: (a.) Even if work was begun on the Waco Tap Railroad prior to 1869, and if there was at the time a law authorizing the donation of land to that company, no right to land was thereby vested in the company for the reason, as stated by this court in Chalk v. Darden, 47 Texas, no person has a vested right in the bounty of the State, but it is competent for the authorities which propose to give to revoke before an interest is perfected in the donee. There is no contention to the effect that rights to lands were perfected prior to the adoption of the Constitution of 1869, and the record and special acts referred to reasonably show that no work had been done until after December 1, 1870. (b.) No rights could vest in the company until the conditions precedent to the acquisition of lands under the bounty laws of the State were complied with. While the effect of the agreement heretofore referred to might have been to throw the burden of this controversy upon the plaintiff in error, yet the facts in the case are conclusive as to the proposition that the conditions of the law of 1854 with reference to the time within which construction should begin and the amount of labor which must be performed had not been complied with.

The certificates were issued in direct violation and disregard of the law. If the contentions heretofore made are correct, the Governor of the State and the Commissioner of the General Land Office were absolutely without authority to issue certificates for the construction of this road, and acts of executive officers outside of the scope of their authority are absolutely void.

Public grants are construed strictly in favor of the grantor. The Binghampton Bridge Co., 3 Wall., 51; Stein v. Bienville Water Supply Co., 141 U. S., 67; Charles River Bridge Co. v. Warren Bridge, 11 Pet., 420; Fertilizing Co. v. Hyde Park, 97 U. S., 659; Tucker v. Ferguson, 22 Wall., 527; Slidell v. Grandjean, 111 U. S., 412; Sagman Gaslight Co. v. City, 33 Fed. Rep., 529.

*T. D. Cobbs, E. H. Graham, Farrar, Jonas & Kruttschnitt,* for defendant in error.—1. Under the agreement in this cause, plaintiff in error having failed to show the invalidity of the certificates, the judgment below is correct and should be affirmed, provided we show a valid transfer of the certificates by the Waco & Northwestern Railroad Company to the Houston & Texas Central Railway Company.

2. The land grant to the Waco & Northwestern Railroad Company is a valid grant, and the judgment below should be affirmed:

On the authority of R. R. Co. v. Commissioners, 36 Texas, 383 (the Kuechler case).

The Supreme Court of the United States has reached the same conclusion in Davis v. Gray, 16 Wall., 203, and this court has adhered to it in Railway v. Gross, 47 Texas, 437. These decisions have become a rule of property and should not be disturbed. U. S. v. Briggs, note to Bright-

ly's Reports, p. 19; Railway v. State, 77 Texas, 388. Where legislation has received a fixed construction, acquiesced in for many years, a change of decision is a clear violation of section 10 of article 1 of the Constitution of the United States, which prohibits a state from passing a law violating the obligation of contracts. Leffingwell v. Warren, 2 Black., 603; Ohio Life Ins. & Trust Co. v. Debolt, 16 How., 416; Louisiana v. Pilsbury, 105 U. S., 294-5; Piqua Bank v. Knoop, 16 How., 393; Anderson v. Santa Anna, 116 U. S., 361. Even if the decisions in question had not become a rule of property, nothing less than absolute conviction that the decision is wrong would justify the court in overruling them, after they have so long been acted on by all departments of the government. Railway v. State, 77 Texas, 388; Railway v. State, 81 Texas, 597; U. S. v. Railway, 142 U. S., 621.

This land grant can also be sustained independently of the Kuechler case, and on entirely different principles: Because all of the grants, provisions, immunities and privileges of the act of 1854 have been extended to the Waco & N. W. R. R. Co. by an express provision in its charter. The validity of such legislation is beyond question. Turney v. Wilton, 36 Ill., 393; Nunes v. Wellisch, 18 Busch, 367; Wood v. Hustis, 17 Wis., 418; Crosby v. Smith, 19 Wis., 453; Flanders v. Merrimack, 8 Wis., 576; Humphreys v. Pegues, 16 Wall, 245; The Binghampton Bridge Case, 3 Wall., 77; Railway v. Poole, 32 Fed. Rep., 452; Spring Valley W. W. Co. v. San Francisco, 22 Cal., 438; Jones v. Dexter, 8 Fla., 284; Sutherland on Statutory Construction, 257; Endlich on Statutory Construction, 50-101-134-233; Sedwick on Statutory Construction, 229. And this is true even if the legislation of 1854 had ceased to have the force of general law when the charter was granted. Flanders v. Merrimack, 48 Wis., 576; Wood v. Hustis, 17 Wis., 418; Crosby v. Smith, 19 Wis., 453; Sika v. Railway, 21 Wis., 371-76; Spring Valley W. W. Co. v. San Francisco, 22 Cal., 438; Nunes v. Wellisch, 12 Bush., 367; Section 14 of Acts as to Courts of Civil Appeals, p. 173 of Acts of 1893. And the grant to the W. & N. W. R. R. Co., which has no Gulf terminus, is not hampered by any requirements as to the construction of a given number of miles of road in a given time. (Section 12 of Act of January 30, 1854, and especially provisos thereof.) Nor are there any other requirements in the charter, which if not complied with will defeat the grant. And, even if there had been, no one except the State, and in a direct proceeding, could take advantage of the forfeiture. Railway v. The State, 81 Texas, 595; Schulenburg v. Herriman, 21 Wall., 63; 2 Morawitz on Corp., 769, 1029; County of Macon v. Shores, 97 U. S., 277; Davis v. Gray, 16 Wall., 232; Angell and Ames on Corp., 757-77; Hodges v. Railway, 58 Md., 603; Railway v. McGee, 115 U. S., 469; Grinnell v. Railway, 103 U. S., 744; State v. Morris, 73 Texas, 440; San Antonio v. Jones, 28 Texas, 33-4.

The Governor was by law considered the sole and final judge, whether or not all the antecedent acts were done and performed prior to the issuance of the land certificates, and his acts in respect to the facts, or

as to the question of the construction of a railway, and as to the time of its completion, and as to whether or not it was completed, as the law requires, are conclusive against the world, and especially in a collateral attack by a junior locator. Hancock v. McKinney, 7 Texas, 444; Jenkins v. Chambers, 9 Texas, 167; Styles v. Gray, 10 Texas, 504; Ruis v. Chambers, 15 Texas, 586; Herndon v. Robertson, Id., 599; Johnstone v. Smith, 21 Texas, 730; Decourt v. Sproul, 66 Texas, 370; Railway v. State, 77 Texas, 388; Railway v. State, 81 Texas, 597; Tarlton v. Kirkpatrick, 21 S. W. Rep., 409; State v. Morgan, 12 S. W. Rep., 244; Moore v. Robins, 96 U. S., 530; Railway v. Railway, 112 U. S., 414; U. S. v. Railway, 98 U. S. 334; U. S. v. Railway, 142 U. S., 615; Van Wyck v. Knevals, 106 U. S., 360; Bybee v. Railway, 139 U. S., 663; Railway v. McGee, 115 U. S., 469; Doe v. Larmore, 116 U. S., 198; U. S. v. Cal. & Oregon Land Co., 148 U. S., 31, and an overwhelming array of cases cited in the decision of the last named case.

Objections of plaintiff in error to our claim considered and refuted. The objection that sec. 18 of the Waco Tap Charter violates the constitutional provision that no law shall be revised or amended by its title is not well taken. Even in States where the Constitution expressly prohibits the extending of a law or conferring its benefits without re-enacting the whole statute, legislation such as that in question is held valid. Constitutions of several other States reviewed. Campbell v. Board, 45 N. J. L., 244; Campbell v. Board, 47 N. J. L., 347; De Camp v. Railway, 47 N. J. L., 45; In re Application of Union Ferry Co., 98 N. Y., 139-158; People ex rel. v. Banks, 67 N. Y., 568-75; People v. Squire, 107 N. Y., 593. The objection that the Constitution of 1859 had the effect of repealing the eighteenth section of the Waco Tap Charter is not well taken, because that clause of the Constitution has a prospective operation only. Railway v. Comm., 36 Texas, 398; Railway v. Gross, 47 Texas, 437; Davis v. Gray, 16 Wall., 203. The Constitution, which is a general law, will not be construed to repeal the charter, a special law, unless such a construction be unavoidable. Sutherland on Stat. Con., secs. 137, 138-148-152-158; Scoby v. Sweatt, 28 Texas, 728; Hanrick v. Hanrick, 54 Texas, 108-9; Neill v. Keese, 5 Texas, 23; Laughter v. Seela, 59 Texas, 185; City of Grand Rapids v. Railway, 33 N. W. Rep., 750; Freehold, etc., v. Stewart, 29 N. J. L., 121; Greenwood v. Freight Co., 105 U. S., 17. The objection that the amendatory Act of August 6, 1870, practically created a new corporation is not well taken, as appears from a review of the legislation itself. The objection that the proviso in section 1 of the Act of August 6, 1870, is itself an admission by the company and an assertion by the Legislature of the fact that the land grant had then already been lost, is not good, because other parts of the charter are inconsistent with such a construction, and also because the words used in the proviso are not apt nor sufficient to effect a repeal. A land grant is not a bounty, as claimed by plaintiff in error, but a grant for a good and valuable consideration. U. S. v. Railway, 150 U. S., 1-8-14;

101 U. S., 71-83. The Constitution of 1869 did not have the effect of office found. Railway v. McGee, 115 U. S., 474.

Defendant in error has shown a valid transfer to it of the land certificates in controversy: (a) By deed from W. & N. W. R. R. Co., through John T. Flint, its President, thereto duly authorized by resolution of its Board of Directors. If there be anything wrong in the form of transfer adopted, we have a case of a defective execution of a valid power which a court of equity will aid, and the conveyance passed a good equitable title. Brown v. McConnell, 56 Texas, 231; Giddings v. Butler, 47 Texas, 547. Trustees or other donees of a power may delegate to another the mere ministerial work of executing a deed after exercising their own judgment about the matter. Smith v. Swan, 2 Texas Civ. App., 563; Hawley v. James, 5 Paige, 487; 1 Sugden on Powers, 267-*215; 2 Kent, 633, note 2. (b) By the Act of Merger of May 24, 1873, which vested all the properties, rights, franchises and privileges of the Waco and Northwestern Railway Company in the Houston and Texas Central Railway Company. Any rights adverse to the last named company are equities only, and have been barred by laches and lapse of time, and are also subordinate to our equities. (c) By deed from Gray & Botts, trustees, which conveyed, inter alia, all the chartered rights, privileges and franchises of every kind, then possessed by the W. & N. W. R. R. Co., or to which it might thereafter become entitled; and all of which rights, etc., had been conveyed in trust to Gray & Botts in the same terms above recited.

The right to acquire the land in controversy, under section 18 of the charter, was one of the "chartered rights" of the company, and one of its "franchises." Pierce v. Emery, 32 N. H., 507; Angell & Ames on Corporations, sec. 4; Bank of Augusta v. Earle, 13 Pet., 595; Rorer on Railroads, 72-3; Railway v. Georgia, 98 U. S., 359; Railway v. Orton, 32 Fed. Rep., 474; Morris & Cummings v. State, 65 Texas, 58; Railway v. State, 75 Texas, 378; Davis v. Gray, 16 Wall., 228; State v. Railway, 36 Minn., 259. This view is in fact fixed by statute in Texas, and was so fixed at the time when these deeds were executed. Paschal's Digest, art. 4912; Acres v. Moyne, 59 Texas, 626; Railway v. Morris, 67 Texas, 700; Railway v. Newell, 73 Texas, 338.

In Shirley v. Railway, 78 Texas, 146, this court held, that the Gray & Botts sale did not pass title to these certificates, but that the Flint deed did. If the court should now decide that it was wrong as to the Flint deed, then it will certainly re-examine the whole matter, and review its opinion as to the Gray & Botts deed also.

*C. A. Culberson, Attorney General,* and *R. L. Batts, Assistant,* for the State.—Certificates issued for the construction of the Waco and Northwestern Railway from Bremond to Waco, and all locations made by virtue of said certificates, and all patents upon said locations, are void.

This conclusion is based upon the following propositions: (1) There was never a law authorizing the issuance of certificates for the construction of the Waco and Northwestern road from Bremond to Waco.

(2) If there was ever a law authorizing the issuance of certificates for the construction of the Waco and Northwestern road from Bremond to Waco, there was none during the time of construction nor at the time of the issuance of certificates, unless, prior to the adoption of the Constitution of 1869, there existed a contract between the State of Texas and the Waco and Northwestern Railroad Company, with reference to the public lands, or unless rights to public lands, or rights to acquire public lands had vested in that company prior to that time.

(3) There was never a contract between the State of Texas and the Waco and Northwestern Railroad Company with reference to the acquisition by the company of the lands of the State.

(4) There were never vested in the Waco and Northwestern Railroad Company rights to public lands, nor rights to acquire such lands from the State.

(5) The certificates were issued in direct violation and disregard of the law.

The only laws (excepting special laws and charters that could not possibly affect the rights of the Waco and Northwestern Railroad Company) with reference to donations of land to encourage construction of railways in this State, are as follows:

"An Act to encourage the construction of railways by donations of land," passed January 30, 1854.

An Act supplementary thereto, passed the same day.

An Act supplementary thereto, passed February 16, 1858.

"An Act for the relief of the Memphis and El Paso Railroad Company and all other companies," passed March 20, 1861.

"An Act for the relief of railroad companies," passed January 11, 1862.

"An Act for the relief of companies incorporated for purposes of internal improvements, by allowing them further time on account of the pending war," passed January 11, 1862.

"An Act to incorporate the Waco Tap Railroad Company," passed November 5, 1866.

"An Act for the benefit of railroad companies," passed November 13, 1866.

Two acts, one passed August 6, 1870, another December 1, 1871, amending sections of the "Act to incorporate the Waco Tap Railroad Company." * * *

*Clark & Bollinger* and *Richard Harrison*, as amici curiae and for stockholders of Waco and Northwestern Railway Company.—At and during the time the Waco and Northwestern Railroad was constructed and completed from Bremond, in Robertson, to Waco, in McLennan County, as well as at the time the land certificates for the construction of same were issued to said company by the Commissioner of the General Land Office, there was in force a general law of the State authorizing the issuance of said certificates of said company. Acts January 30, 1854, General Laws, pp. 11 and 16; Acts January 11, 1862, General Laws, pp. 44 and 46;

Acts November 13, 1866, General Laws, p. 212; Constitution 1869, art. 12, sec. 33; Railway v. Comr., 36 Texas, 382; Railway v. Gross, 47 Texas, 437; Davis v. Gray, 16 Wallace, 225.

By the adoption of the Constitution of 1869 the general laws then in force granting lands in aid of the construction of railroads were not repealed as to railroad companies chartered and created prior to its adoption. The inhibition in section 6, article 10 of said instrument related to future and not to then existing laws or grants. Constitution 1869, sec. 6, art. 10, sec. 33, art. 12; Railway v. Gross, 47 Texas, 432-3; Railway v. Land Comr., 36 Texas, 385; Davis v. Gray, 16 Wallace, 225; Grigsby v. Peak, 57 Texas, 142; Sutherland on Const. and Stat. Law, sec. 464; Cooley's Const. Lim., 6th ed., 77, and note 3.

The eighteenth section of the Charter of Waco and Northwestern Railroad Company, extending to it the benefits of the land grants in aid of the construction of railroads, constituted a contract between the State and said company which could not be repealed or impaired by subsequent organic or statutory law without violating the Federal Constitution. Ordinance No. ——, Const. Convention 1869; U. S. Constitution, art. 1, sec. 10; Railway v. State, 75 Texas, 378; Railway v. Comr., 36 Texas, 382; Railway v. Gross, 47 Texas, 437; Davis v. Gray, 16 Wallace, 203.

The construction given to the Constitution of 1869 by the court in the cases of Railway v. Commissioner, 36 Texas, Davis v. Gray, 16 Wallace, and Railway v. Gross, 47 Texas, relative to land grants in aid of railroads, having been accepted and acted upon by the State, through its executive officers, in the issuance of titles, and relied upon by the public in the purchase of such titles for a long period of years, constitutes a rule of property which cannot now be disturbed, even though this court may entertain a different view upon the question as an original proposition. Railway v. State, 77 Texas, 388; Railway v. State, 81 Texas, 572; Willis v. Owen, 43 Texas, 48; Sydnor v. Gascoigne, 11 Texas, 455; Welch v. Sullivan, 8 Cal., 188; Giblin v. Jordan, 6 Cal., 418; Pioche v. Paul, 22 Cal., 110; Hilm v. Courts, 31 Cal., 402; Rockhill v. Nelson, 24 Ind., 424; Reed v. Ownby, 44 Mo., 206; Wells Res Adjudicata and Stare Decisis, secs. 594-98, 605 and 611; Sutherland Stat. Construction, secs. 307, 310, 311, 315; Cooley's Const. Lim., pp. 60-68.

The effect of the special acts of August 6, 1870, and December 1, 1871, amending the charter of the Waco and Northwestern Railroad Company, by which its corporate rights and powers were enlarged and the time for the construction and completion of its road was extended, was a waiver on the part of the State of the failure, if any, of the company to construct its road as rapidly as contemplated in the original charter. State v. Morris and Cummins, 73 Texas, 435; Railway v. State, 81 Texas, 592; Davis v. Gray, 16 Wall., 223; Matter of Elevated Ry. Co., 70 N. Y., 327; Beach on Priv. Corp., sec. 59, and note; 2 Willson's Civ. Cases, 87.

The Waco Tap Railroad Company having organized under and accepted its original charter of 1866 and having commenced work in good

faith, anterior to the adoption of the Constitution of 1869, the proviso in the amended charter of 1870 must be construed in the light of existing conditions as manifesting the intent of the Legislature not to embarrass by fresh legislation, the decision of what was then a litigated and disputed question, to-wit:  Whether that class of railway corporations were entitled to the land donations conferred by the Acts of 1854 as extended by the Act of 1866; and said proviso cannot, by any known rule of construction, be construed as inhibiting or intending to inhibit the Waco and Northwestern Railroad Company from receiving the benefit of the land grant, ipso facto, on that part of the road embraced in the original charter.  Ordinance No. ——, Journal Const. Convention 1869; Constitution 1869, art. 12, sec. 33; Railway v. Commr., 36 Texas, 382; Railway v. Gross, 47 Texas, 437; Railway v. State, 81 Texas, 592; Davis v. Gray, 16 Wall., 225; Sutherland on Statutory Construction, secs. 218, 219, 223 and 267.

. As to want of power in the president of a sold out company to act. Rev. Stats., art. 4264; Witherspoon v. Railway, 48 Texas, 309.

As to the effect of the Act of Merger of May 24, 1873.  Taylor on Private Corporation, sec. 428; 1 Beach on Railways, secs. 581, 543; McMahon v. Morrison, 16 Ind., 172; s. c., 79 American Decisions, 418, with elaborate note; 4 Amer. & Eng. Enc. Law, 272, et seq.; Shields v. Ohio, 95 U. S., 319; Railway v. Georgia, 98 U. S., 359.

GAINES, CHIEF JUSTICE.—The defendant in error, the H. & T. C. Ry. Co., brought this suit to recover of the plaintiff in error, Quinlan, five sections of land which had been located and surveyed by virtue of certificates issued to the Waco and Northwestern Railroad Company.  The defendant in the trial court claimed title to five other sections which had been located and patented by virtue of other certificates and disclaimed as to any land sued for by plaintiff that was not embraced in such patented surveys.  The trial developed a question of the legality of the survey as well as a question of boundary and of a conflict between the defendant's surveys and those claimed by the plaintiff, both of which were resolved by the trial court in favor of the plaintiff.  It was agreed between the parties, that the certificates under which the plaintiff claimed were valid; but before going to trial this agreement was so far modified as to permit the defendant to show that they were invalid.  This left the case as if no agreement had been made.  The certificates were prima facie valid, and the burden was upon the defendant to show their invalidity, in order to maintain that ground of defense.  The title of the plaintiff to the certificates, by virtue of which the lands claimed by it were located, was also contested.  All these questions were determined by the trial court in favor of the plaintiff and judgment was rendered for it.

The Court of Civil Appeals affirmed the judgment and this writ of error is prosecuted from the judgment of affirmance.

The questions presented by the petition for a writ of error are two:

1.   Are the certificates which were issued to the Waco & N. W. R. R. Co. valid? and

2.   If valid, did the plaintiff company have title to such certificates?

We will dispose of these questions in the order in which we have stated them.

By a special act of the Legislature, passed August 6, 1870, the charter of the Waco Tap Railroad Company was amended and its name changed to that of the Waco & North Western Railroad Company. (Special Laws 1870, p. 112.)   The Waco Tap Railroad Company was incorporated by virtue of a special act approved November 5, 1866.   Section 18 of that act reads as follows:

"That there be extended to this Company all the grants, provisions, immunities and privileges of an act entitled an Act to encourage the construction of railroads in Texas, by donations of lands, approved January 30, 1854; that this charter is granted subject to all the provisions of the general railroad laws as they now exist, or as they may hereafter be altered or amended."   (Special Laws 1866, p. 257.)

The defendant in error claims that the certificates issued to the Waco and Northwestern Railroad Company are valid, both by virtue of the provision quoted, as well as by the inherent force of General Law of January 30, 1854.   The plaintiff in error, however, claims not only that section 18 is inoperative, because it is in conflict with section 25 of article 7 of the Constitution then in force, but also that the Act of 1854 applied only to railroad companies then chartered.   The latter question comes first in logical order; but in the view we take of the case its determination is probably not necessary to a decision.   However, the construction of the Act of 1854 tends, we think, to throw light upon the subsequent legislation in regard to grants of lands to railroad companies, and we therefore express our views upon the question.   It is sufficient for our purpose to quote only certain parts of the statute.   Section 1 reads as follows:   "Be it enacted by the Legislature of the State of Texas, that any railroad company chartered by the Legislature of this State, heretofore or hereafter, constructing within the limits of Texas a section of twenty-five miles or more of railroad, shall be entitled to receive from the State a grant of sixteen sections of land for every mile of road so constructed and put in running order."   (Laws 1853-4, p. 11.)

The following is a copy of section 12:   "That the provisions of this act shall not extend to any company receiving from the State a grant of more than sixteen sections of land, nor to any company for more than a single track road, with the necessary turnouts; and any company now entitled by law to receive a grant of eight sections of land per mile for the construction of any railroad, accepting the provisions of this act, shall not be entitled to receive any grant of land for any branch road; provided, this act shall not be so construed as to give to any company now entitled by law to receive eight sections of land, more than eight additional sections; provided, that no person or company shall receive any donation or benefit under the provisions of this act, unless they shall

construct and complete at least twenty-five miles of the road contemplated by their charter within two years after the passage of this act; and such donations shall be discontinued in every case where the company or companies shall not construct and complete at least twenty-five miles of the road contemplated by their charter each year after the construction of said first mentioned twenty-five miles of road; and further provided, that the proviso herein contained shall not extend to any railroad the terminus of which is not fixed on the Gulf coast, the bays thereof, or on Buffalo Bayou, and that nothing in this section shall be so construed as to extend the duration of any existing charter; and further provided, that the certificates for land issued under the provisions of this act shall not be located upon any land surveyed or titled previous to the passage of this act; and further provided, that this act shall continue in force for the term of ten years from the time it shall take effect and no longer."

The word "chartered," in the absence of other words indicating that it was used in the future-perfect tense, applies to past transactions. It is true that the language of statutes is frequently elliptical and that the context may constrain the courts to insert words that are obviously intended to be supplied. But we find nothing in the act which tends to show that it was the purpose of the legislation to confer the privileges therein granted upon companies thereafter to be chartered. On the contrary, the proviso contained in the twelfth section, that no company should receive any benefits of the act unless it should complete twenty-five miles of its road "within two years after the passage of the act," is inconsistent with the idea that it was intended to apply to future companies. There was then no general law for the incorporation of railroad companies, and it would have been practically impossible for any company chartered even by the next Legislature to comply with that proviso. If it had been intended that the act should apply to companies thereafter to be chartered, the proviso would have been made expressly applicable to existing companies only, and a provision would have been made that as to new companies the two years' limitation should commence to run from the grant of their charters. The legislation of that era for the encouragement of the construction of railroads makes it manifest, we think, that the legislative policy was, as to companies then chartered, to confer by general laws the privilege of earning lands, and in granting new charters to make such provisions for the companies thereby created as should be demanded by such special conditions as should exist at the time of the grant. That such was the policy of the Legislature which passed the statute in question is shown by the subsequent legislation at the same session. There were seven special charters granted in 1854, in all of which special provisions were made for land grants. The same policy and practice were pursued by subsequent Legislatures while the act of 1854 continued in force. We are aware that in Railroad Co. v. Kuechler, 36 Texas, 382, it was held that the statute applied to companies there-

after to be chartered as well as to those previously chartered, but we think that ruling clearly erroneous and cannot assent to it.

Since we hold that the general law of 1854 applied only to companies in existence at the date of its passage, it must be held that whatever rights the Waco & Northwestern Railroad Company acquired under it were derived from that section of the special charter of the Waco Tap Railroad Company which attempted to confer upon the latter company the benefits of that law. But it is insisted that the law of 1866 was in conflict with section 25 of article 7 of the Constitution then in force. That section is as follows: "No law shall be revised or amended by reference to its title; but in such case the act revised, or section amended, shall be re-enacted and published at length." (Const. 1845, art. 7, sec. 25.)

It is quite clear that section 12 quoted above from the special charter is in no sense a revision of the act of 1854. It extends the operation of that act so as to make it apply to a company to which it did not apply before. If this may be deemed an amendment in any sense of that word, it is evident that it was not such an amendment as was contemplated by the section of the Constitution just quoted. There are many statutes that do not purport to be amendments, that have the effect to enlarge or to restrict the operation of others. In the absence of some constitutional restriction of like effect to that of section 25 of article 7 of the Constitution of 1845, it was the usual practice of legislative bodies to amend a law simply by providing that certain words should be added, or that others should be stricken out, or that in place of certain language certain other language should be substituted. Such an amendment frequently presented a problem in construction that it was difficult for the average mind to solve. This practice afforded a means of imposing upon unwary members of the legislative bodies and of procuring the passage of amendments which would never have passed had their effect been fully understood. So also the amendment when passed did not admit of that ready understanding which is desirable in all written laws. These were the evils which it was the purpose of section 25 to suppress. That provision and other similar constitutional restrictions upon the form of legislation have never in construction been given a rigid effect. They have been held applicable to such statutes only as come within their terms, when construed according to the spirit of such restrictions and in the light of the evils to be suppressed. Any other rule as applied to the particular inhibition under consideration would work great if not intolerable inconvenience and would render the statutes unnecessarily voluminous. The People v. Mahaney, 13 Mich., 481, is a leading case upon this subject. The opinion in that case was rendered by Judge Cooley and has been frequently quoted with approval. Evernham v. Hulit, 45 N. J. L., 53; Home Ins. Co. v. Taxing District, 4 Lea. (Tenn.), 644; State v. Cross, 38 Kan., 696; Timm v. Harrison, 109 Ill., 593. The same doctrine is announced in many other cases, some of which we cite: Ex parte Pollard, 40 Ala., 77; Shields v. Bennett, 8 W. Va., 74; State v.

Yardley (Tenn.), 32 S. W. Rep., 481; Anderson v. The Commonwealth, 18 Gratt., 295; Fleischner v. Chadwick, 5 Or., 152; Davis v. The State, 7 Md., 152.

Section 12 of its charter extends to the Waco Tap Railroad Company, in express terms, the privileges of earning lands which were granted to other railroad companies by the general law of January 30, 1854. The meaning of the section is as clear as if the provisions of the general law had been repeated in the act. It incorporates the privileges of that law, and makes them a part of the special charter. By reference to the act we know what the privileges were which were intended to be granted. The practice of making the provisions of one statute applicable to another by a reference to the former law in the new act is of frequent occurrence in legislation both in England and in this country, and such legislation has been uniformly recognized as valid, so far as we have been able to discover. Warrenton W. W. Co. v. Longshaw, L. R., 9 Q. B. D., 145; Attorney General v. Gas L. & C. Co., L. R., 7, Ch. Div., 217; Sika v. Railway Co., 21 Wis., 375; Wood v. Hustis, 17 Wis., 429; Crosby v. Smith, 19 Wis., 472; Turney v. Wilton, 36 Ill., 385; Jones v. Dexter, 8 Fla., 276; Spring Valley W. W. v. San Francisco, 22 Cal., 434; Schwenke v. Railway, 7 Col., 512.

In the case of the Chenango Bridge Company v. The Binghampton Bridge Company, 70 U. S., 51, the Supreme Court of the United States held a similar provision good and in construing it said: "The form adopted in making the grants has weight in arriving at the true legislative intention; and it is worthy of consideration that it is not unusual in the legislation of this country to grant vast powers in a short act by referring to and adopting the provisions of other corporations of like purposes. In fact, some of the great enterprises of the day have sprung into existence and distributed their blessings by virtue of legislation similar to that which created the Susquehanna Bridge Company. The object is apparent not to incumber the statute book by useless repetition and unnecessary verbiage."

But it is also urged that the act of January 30, 1854, had expired by its own limitation, and that for that reason section 18 of the special act was inoperative. We are of opinion, however, that the general law had not expired for all purposes. According to its terms that act was to continue in force for the term of ten years—that is to say, until January 30, 1864. But on the 11th day of January, 1862, the Legislature passed an act, the first section of which reads as follows: "The failure of any chartered railroad company in this State to complete any section or fraction of a section of its road, as required by the existing laws, shall not operate as a forfeiture of its charter or of the lands to which said company would be entitled under the provisions of an act entitled, 'An Act to encourage the construction of railroads in Texas, by donations of land,' approved January 30, 1854, and the several acts supplementary thereto: Provided, said company shall complete such section or fraction ·of a section as would entitle it to donations of land under existing laws,

within two years after the close of the present war between the Confederate States and the United States of America." (Pas. Dig., art. 4961.)

As we construe this statute, it was merely an act for the relief of such companies as had been constructing their lines under the law of 1854 with a view to secure the benefits of that act. But its effect was to continue the operation of the original law as to such companies until two years after the close of the war.

But if the law of 1854 had ceased to operate when the special charter of the Waco Tap Railroad Company was granted, does it follow that section 18 of that charter would have been of no effect? The Constitution of 1845 contained no inhibition against the revival of statutes by reference to their title. The present Constitution has a provision which corresponds to section 25 of article 7 of the Constitution of 1845; but that provision uses the word "revive," instead of "revise." If it had been in force when the act of 1866 was passed, and if the law of 1854 had then expired, it would have presented the question, whether the older law could have been revived and made applicable to the Waco Tap Railroad Company by a mere reference to its title. But under the Constitution in force when the special charter was granted, the question does not arise.

In the absence of any constitutional restriction, we are of opinion that one statute by a proper reference to another may incorporate in it the provisions of the former law, although the former may have expired or may have been repealed. A law so referred to in another and made a part of it, does not operate by its inherent force, but takes effect from the statute in which it is incorporated. In case of a written contract which refers to another writing, we look to that which is referred to, for the purpose of determining the intention of the parties in regard to the subject matter of the contract. So where one statute adopts the provisions of another, we look to the provisions of the other merely for the purpose of discovering the legislative intent; and no reason is seen why, in such a case, the will of the Legislature should not be given effect. If the statute referred to be an existing law, the legislative purpose is to apply its provisions to the subject matter of the new act. If it has expired or has been repealed, the purpose is to revive it and make it applicable in the same manner. So it has been expressly held that the provisions of a repealed law may be made a part of a new statute by referring to it in general terms without incorporating such provisions at length. Flanders v. Merrimack, 48 Wis., 567. This accords with the rule which is generally recognized, that the repeal of an act the provisions of which have been incorporated into another by reference to its title does not repeal so much of the later act as so incorporates it. Sika v. Railway Co., 21 Wis., 370; Spring Valley W. W. v. San Francisco, 22 Cal., 434; Nunes v. Wellisch, 12 Bush. (Ky.), 363; Schwenke v. Railway Co., 7 Col., 512.

On the 13th day of November, 1866, the same Legislature which

granted the special charter to the Waco Tap Company passed a general law, which contained, among others, the following provisions:

"Be it enacted by the Legislature of the State of Texas: That the grant of sixteen sections of land to the mile to railroad companies, heretofore or hereafter constructing railroads in Texas, shall be extended, under the same restrictions and limitations heretofore provided by law, for ten years after the passage of this act."

"That it is not intended by the preceding section to interfere with or impair the rights which have been heretofore acquired by companies under laws heretofore in force, but to preclude companies from hereafter taking advantage of the provisions of sections 2, 3, 4 and 5 of the Act of January 30th, 1854, and the supplementary Act thereto of 16th February, 1858: Provided, that all tap roads over twenty-five miles long shall be entitled to the benefits of this act." (Laws 1866, p. 212.)

The name of the company indicates that it was a tap road and the evidence shows beyond controversy that its proposed line was more than twenty-five miles in length. This makes it clear, we think, that it was entitled to the extension granted by the law just quoted and renders it unnecessary for us to determine the length of time allowed it for the construction of its road, in order to earn the lands under its original charter. It is to be noted, that provision of the law of 1854 which required certain companies to complete twenty-five miles of their respective roads within two years after the passage of the act and at least twenty-five miles every year thereafter, applied only to those companies whose lines had their initial point upon Buffalo Bayou or upon the coast. Railway Co. v. Kuechler, 36 Texas, 382. The Waco Tap Railroad Company was not one of those.

We conclude, therefore, that the general Act of November 13, 1866, was intended to confer upon the proposed corporation, the Waco Tap Railroad Company, the privilege of acquiring lands from the State, and that it would have been effective for that purpose had the company organized, accepted the charter and complied with its provisions. A charter is held to be a contract, and before an offer becomes a contract there must be an acceptance. And therefore a charter granted by a special act, until there has been an acceptance, does not constitute a contract. In the act in question, the right to become a corporation is not conferred upon any particular persons. The offer is to any persons who may take stock and organize the company; and commissioners are named for the purpose of effecting the organization. No formal acceptance is required by the act. In such a case an organization is an acceptance, but without an organization there can be no acceptance.

Had the company ever organized when the special act which amended its charter was passed? Did it have any existence, or even the right to organize at that time? If an organization was previously effected there is no direct evidence of the fact.

The certificates, it is true, are prima facie valid; and from their issue the presumption arises, that the Commissioner of the General Land Office

inquired into and found the existence of all the facts requisite to justify his action. In the absence of countervailing proof, this presumption for the purpose of this suit would have been deemed conclusive. But the defendant introduced in evidence the Act of August, 1870, which purports to amend the original charter, and we think that that act itself affords strong evidence that at the time of its passage the Waco Tap Railroad Company had never been organized. So much of that act as is necessary for the purposes of this opinion reads as follows:

"That section first of the above entitled act, approved November 5, 1866, shall be so amended as to read as follows: That a corporation and body politic be and the same is hereby created, to consist of the president, directors and stockholders of a company, to be styled 'The Waco Tap Railroad Company,' and J. B. Earle, James E. Harrison, George E. Burney, Richard Coke, E. J. Gurley, L. F. Puckett, J. M. Steiner, John Shackleford, William Dunklin and H. W. Hood be and they are hereby commissioners to organize said company; and the name of said company shall be, and is hereby now changed from the Waco Tap Railroad Company, to be called hereafter 'The Waco and Northwestern Railroad Company,' and said company shall have power in their corporate capacity under the name and style of the 'Waco and Northwestern Railroad Company,' to have succession and a common seal; to make contracts; to sue and be sued; to plead and be impleaded; to grant and receive; to make by-laws, and generally to do and perform such acts and things proper and necessary to be done to carry into effect the objects and consummate the ends of this incorporation, and the maintenance of the rights accruing under or connected with it, if not inconsistent with the laws of the State, and shall succeed to all the rights of the 'Waco Tap Railroad Company': Provided, that nothing in this act contained shall be considered as reviving any land grant to said railroad company."

"Section second shall hereafter read as follows: Said corporation is hereby invested with the right to locate, construct, operate, own and maintain a railway and telegraph line, commencing at a convenient point on the Houston and Texas Central Railroad, within or below the County of Falls, and running thence in a northwesterly direction, by the most eligible route, to or near the town of Waco, crossing or recrossing the Brazos River whenever the company may deem it necessary; and thence up the general course of the Brazos River northwestwardly to the vicinity of the copper and coal mining regions on the waters of the Brazos River; and thence to the north line of the State of Texas, on Red River; and the said company shall have the right to cross the line of any other railroad on its line, and may form a junction with any other railroad company running in the same general direction, with full power to unite and consolidate with the same upon such terms as may be agreed upon by said company, with the power and right to change the name thereof upon such consolidation."

"Sec. 4. Section fifth shall hereafter read as follows: "The immediate government and direction of the affairs of said company shall be vested

in a board of not more than eleven directors, who shall elect one of their number president. No person shall be eligible to the office of director unless he be the owner of at least ten shares of the stock of said company. The directors shall be elected annually by the stockholders, each being entitled to one vote for every share he may own, the first election to take place within two years of the passage of this act, at such time and place as the persons named in the first section of this act, or a majority of them, may determine    *    *    *."

"Sec. 8.  Section thirteen shall hereafter read as follows:  Said company shall commence the construction of said road within twelve months after the organization of their company, and shall complete and have in running order twenty miles of said road on or before the first day of December, 1871, and shall complete fifteen miles yearly thereafter, until said road be completed to or near the city of Waco, say to the Waco depot; and fifty other miles shall be completed within three years thereafter; and twenty miles a year thereafter, until the road is completed to its northwestern terminus in the copper or coal mining regions, or to the State line." (Special Laws 1870, p. 112.)

The first section of this act indicates that the company had never been organized. If organized, why name the same commissioners who were appointed in the original act and provide that they should organize it? If any work had ever been done in constructing the road, why provide, in section 13, as amended, that the company should commence the construction within twelve months after the organization of the company? The only expression in the act which tends to another conclusion is the provision that the company "shall succeed to the rights" of the original company, which indicates that the latter had acquired some rights to be preserved. This was probably intended, however, to continue in effect certain legislation authorizing a tax to aid in the construction of the road, of which we shall speak more fully hereafter. Viewing the whole of the amended act, we think that it evinces that the original company had never been organized and that it was the intention to revive it and give it a new lease of life. While the statute conferred some additional powers, its language tends strongly to show that the main purpose was to give the proposed company a new start.

Now, we think that the recitals in the charter of the Waco and Northwestern Railroad Company are evidence against the plaintiff, but we do not hold that they should be deemed conclusive. There is no direct recital that the Waco Tap Company had never been organized, but as we have intimated, the implication to that effect, from its provisions, is very cogent. It was competent for the plaintiff to have shown, if it could have done so, that an organization had in fact been effected, and that the rights proposed in that charter had been acquired and preserved when the amendatory act of 1870 was passed. But the statement of facts in the record before us leaves the period between the passage of the original charter and of the amendment a blank. If anything was done under the charter during that time the evidence does not show it. The very meager

testimony upon the question of construction tends at most to show that
the work was begun in the early part of the year 1871 and was not com-
pleted until about the first day of December, 1872.

But it is claimed in argument that the existence of the Waco Tap Rail-
road Company was recognized in legislation previous to the passage of
the amended charter. On the 11th day of December, 1868, the conven-
tion then in session passed a declaration or ordinance providing for the
levy of a tax upon the people of Falls and McLennan Counties to aid
in the construction of the Waco Tap Railroad. The ordinance provided,
that the question of the tax should be submitted to a vote of the people;
that in case a majority should vote in favor of the tax, that the assessor
and collector of taxes of the county so voting should give a bond "payable
to the president and directors of the Waco Tap Railroad Company" for
the faithful performance of his duties under the ordinance. There is
also a provision for the payment of the money to be collected to the treas-
urer of the company and for an issue of stock under certain conditions
by the president and directors to the taxpayers. This ordinance, if valid
for any purpose, was probably sufficient to waive any ground of forfeiture
that may have accrued and to revive the corporate existence if it had
been lost. But that it is proof that the company had been organized is
not clear. We are of opinion, however, that the ordinance was not valid.
The convention which met on June 1, 1868, was assembled in pursuance
of an Act of Congress passed March 23, 1867. It was called for the pur-
pose of framing a Constitution for the State with a view to its restora-
tion to the Union. The Constitution to be framed by it was to be submit-
ted for ratification to a vote of the people. See Act of Congress of March
23, 1867, secs. 3 and 4, 2 Pas. Dig., p. 1093. The Act of Congress did
not invest the convention with the power of independent legislation. It
is true that the question of the propriety of incorporating any specific
provision into the fundamental law was for the sole determination of
the convention. But we are of opinion that when a convention is called
to frame a Constitution which is to be submitted to a popular vote for
adoption, it cannot pass ordinances and give them validity without sub-
mitting them to the people for ratification as a part of the Constitution.
The delegates to such a convention are but agents of the people and are
restricted to the exercise of the powers conferred upon them by the law
which authorizes their election and assemblage. The ordinance of the
convention in question, which divided the State into congressional dis-
tricts, and that which provided for a submission of the proposed Consti-
tution to a vote of the people, are appended to the Constitution as framed
and the whole are signed by the president and members as one instru-
ment. 2 Pas. Dig., p. 1134-5. Section 1 of the latter ordinance contains
the provision, "that the Constitution adopted by this convention be sub-
mitted for ratification or rejection to the voters of this State," etc. There
is no provision for a submission of the independent ordinances. In Stew-
art v. Crosby, 15 Texas, 546, an ordinance attached to the Constitution
of 1845 was held valid. In that case the court say: "For the present,

then, it may suffice to say we think it free from doubt that the ordinance appended to the Constitution is a part of the fundamental law of the land. Having been framed by the convention that framed the Constitution of the State, and adopted by the convention and the people along with the Constitution, it is of equal authority and binding force upon the executive, legislative and judicial departments of the government of the State as if it had been incorporated in the Constitution, forming a component part of it."

This decision was followed without comment in Grigsby v. Peak, 57 Texas, 142, in passing upon the validity of an ordinance of the convention of 1866. From what has been quoted from the opinion in Stewart v. Crosby, supra, it appears that the ordinance then in question was submitted with the Constitution and voted upon by the people. The convention which passed the ordinance which was held valid in Grigsby v. Peak was called by virtue of the proclamation of President Johnson. This proclamation did not require any part of the work of the convention to be submitted to the vote of the people, and in our opinion that convention therefore had the power to pass ordinances without submitting them for adoption to a popular vote. The ordinance now under consideration was not submitted to a vote, though two others, which were added to, incorporated into and signed as a part of the Constitution, were so submitted. Since the convention could not finally legislate, and since a vote of the people was necessary to make its action effective, we conclude that the ordinance in question was invalid and not effective for any purpose.

We are therefore of the opinion that the evidence in the record before us authorized no other conclusion save that, at the time the special Act of August 6, 1870, was passed, the Waco Tap Railroad Company had not been organized. The charter of the company did not expressly fix the time in which it should organize; but when no time is fixed, in such a case the organization should be effected within a reasonable time. State v. Bull, 16 Conn., 179. The thirteenth section of the charter required the company to commence the construction of its road within twelve months from its organization and to have at least twenty-five miles graded within two years from the passage of the act. It necessarily follows that it should have organized before the expiration of two years from the date of its charter. Nearly four years had elapsed when the amended charter was granted. Its position therefore when the amendment was made was the same as if no charter had ever been granted. The company authorized by the original charter never came into being and it could have acquired no rights. The amendatory Act of August 6, 1870, revived the right to form a corporation, but provided that nothing in the act should be construed to revive the land grant.

Besides, when the amendatory act was passed, the following section of the Constitution of 1869 was in force: "The Legislature shall not hereafter grant lands to any person or persons, nor shall any certificates for land be sold at the Land Office, except to actual settlers upon the same,

and in lots not exceeding one hundred and sixty acres." (Const. 1869, art. 10, sec. 6.) Whether that section repealed all existing laws for the grant of lands to railroad companies, in so far as they could be repealed, is a question which does not arise in this case. Undoubtedly it prohibited future grants. If the Waco Tap Railroad Company had never organized, the law for its creation had become a nullity, and it had no existing right to pass to the new company as its successor.

But it is also claimed that the Act of June 18, 1870, which purposes to make legal the void ordinance of the convention of 1868, was a recognition of the corporate existence of the company. If it stood alone, it should probably be deemed conclusive evidence that the corporation had been organized and had a corporate existence at the time the act was passed. But was it evidence that it had been organized when the Constitution of 1869 took effect and the Legislature had been prohibited from making land grants? But this act was passed by the same Legislature which passed the act amending the original charter and is to be construed in connection with it, and when so construed we think it can have no such effect as is claimed for it. The amendments to the charter clearly indicate that the company had not then been organized and that the corporation had then no actual existence. The Act of June 18, 1870, does recognize the existence of the corporation—but this may have been a mere potential existence. That construction is in harmony with the provisions of the special amendatory act passed by the same Legislature and therefore should prevail.

It follows from what we have said that the judgment must be reversed, and the cause will be remanded. If upon another trial it shall be shown that the proposed original company organized so as to save its charter and had not forfeited its rights to earn lands when the Constitution of 1869 went into effect, the question will be presented, whether section 6 of article 10 of that Constitution had the effect to repeal the law which conferred upon the Waco Tap Railroad Company the privilege of acquiring lands by the construction of its road. The further question may arise, whether a failure to comply with section 13 of the original charter, ipso facto, forfeited the company's privilege of acquiring lands. That section has not been before quoted, but reads as follows: "That said company shall commence the construction of said road within twelve months after the organization of their company, and shall have completely graded at least twenty-five miles of said road within two years from the passage of this act, and twenty-five miles shall be graded every year thereafter." (Special Laws 1866, p. 256.)

Those questions involve important and valuable rights not involved in this case, and we do not deem it proper to determine them in advance. It will be time to decide them when a case comes before us in which the facts call for their determination.

The second question presented by the assignments of error in this court is whether or not the plaintiff showed title to the certificates, if valid, upon which the surveys were made. It appears by the statement

of facts in this case, that on the 6th day of July, 1871, the Waco and Northwestern Railway Company executed to two trustees a deed in trust upon its property to secure the Houston & Texas Central Railway Company in the payment of $600,000, and that in pursuance of the power therein conferred the trustees sold the property to the Houston & Texas Central Railway Company and on the 31st day of March, 1873, made a conveyance to the purchaser. The description of the property given in the mortgage and in the conveyance by the trustees contained the following: "And also all and singular the chartered rights, privileges and franchises of every kind granted to the Waco & Northwestern Railway Company by acts of the Legislature of the State of Texas which are now possessed·by it or to which it may hereafter become entitled under said acts and the laws of Texas relating to railroads." In Shirley v. Railway Company, 78 Texas, 131, it is said that these conveyances did not pass the title to the lands earned by the Waco & Northwestern Railway Company by construction of its road. That was a suit by a creditor of that company, in which, among other things, he sought to subject these lands to the payment of his debt. It was held in that case that in so far as the plaintiff sought to reach the lands his suit was barred by limitation. The holding that the deed in trust and the deed of the trustees did not pass the title to the Houston &·Texas Central Railway Company was placed upon the ground that the deed in trust did not embrace the lands. But the questions suggest themselves: Do not the words or description in the mortgage above quoted include the right of the company to acquire lands? and is not the deed of the trustees sufficient to pass the title to all lands, if any, acquired·by the company after the mortgage was executed? It seems to us that these questions were not involved in the case referred to, and that they are still open questions in this court.

But it is insisted on behalf of the defendant in error, the plaintiff in the trial court, that after the sale of the franchises and property of the Waco & Northwestern Railroad Company under the deed of trust to the Houston & Texas Central Railroad Company, the directors of the "sold out" company ordered a conveyance of the lands to the latter company in payment of a balance of $200,000 still due it, and that in accordance therewith the president and secretary of the "sold out" corporation executed a deed thereto to the plaintiff. It seems to have been held in Shirley v. Railroad Company, supra, that such action conveyed the title. But while the record before us shows the deed mentioned, it contains no evidence, so far as we have found, of any action on the part of the directors of the Waco & Northwestern Railroad Company which authorized its execution. Whether the deed above is sufficient to show prima facie, that the title passed, is a more difficult question.

Under the statute then in force the effect of the sale of the Waco & Northwestern Railroad Company under the deed of trust was to pass to the purchaser the railroad and all the property and franchises of the company appropriate to its operation; and also the right of corporate existence. Pas. Dig., art. 4912. But that statute provides also in effect,

that the directors of the "sold out" company shall, as to all property of such company that may not pass by the sale, act as trustees for the purpose of paying the outstanding debts and distributing the surplus, if any, among the stockholders. Pas. Dig., art. 4916. But for the fact that the previous section of the statute had provided that the sale should pass the right to exist and act as a corporation (Pas. Dig., art. 4912, supra), we apprehend that section 9 (Pas. Dig., art. 4916, supra) would have been simply declaratory of the common law. So long as the corporate existence of an insolvent corporation remains, it is the duty of its directors to dispose of its property and to distribute the proceeds equitably among its creditors. Since the statute directed that the sale should transfer the corporate franchise, it was probably necessary to provide that the powers of the directors as to the assets not sold should continue, in order to enable them to administer such assets and to distribute their proceeds among those equitably entitled thereto. Such we think the purpose of the statute and nothing more. Whether they call themselves directors or trustees we deem unimportant. Hence if we had a deed which purported to be executed by the president in behalf of the directors of the "sold out" corporation, we incline to think it should be treated as prima facie evidence of title in the grantee. As was said in Witherspoon v. Railway Co., 48 Texas, 309, they remained a quasi-corporation, and we think they were empowered to convey the remaining property of the corporation in the same form as if no sale had been made. In Thompson on Corporations, sec. 5016, it is said: "Where the instrument is formally executed by the proper officers, generally the president and secretary, the seal of the corporation, formally affixed, carries with it prima facie evidence of an antecedent authorization. This being so, it is not necessary for the instrument to recite such authorization, but if it is challenged, it is to be determined upon proof aliunde." The text is supported by the cases cited. Schallard v. Ell Run, etc., Co., 70 Cal., 144; Hart v. Stone, 30 Conn., 94; Eureka Iron Works v. Bresnahan, 60 Mich., 332. The conveyance of the certificates in question is executed by the president and secretary and is attested by the seal of the corporation. If the corporation had not been "sold out," there can be no doubt but this deed would be prima facie evidence of a conveyance of the title to the certificates; and we incline to think that since we have to deal here with the legal title only, since the defendant cannot set up outstanding equities in another, the deed in question should be deemed to have the same effect, provided it appeared that Flint acted as president of the board of directors existing at the time the company was "sold out." In any event, if there be others who are equitably entitled to the lands located by virtue of the certificates under which the plaintiff claims, they may show in a proper case, if not too late, that the deed was executed without consideration or without authority from the directors of the "sold out" corporation. But the testimony does not make it clear that after the sale a new directory was not elected. We apprehend that there was no power to choose a new directory and that any

action by persons so chosen would have been simply void—unless, per-chance, the old and new directory were composed of the same persons. In that event the rule adopted in this court, that when one having a valid power conveys property, the conveyance is good, although he purports to act under another power which is invalid, should probably apply.

But since the case must be reversed, we do not feel inclined to enter into the field of speculation to determine any of these questions in advance.

For the reasons given the judgment is reversed and the cause remanded.

*Reversed and remanded.*

March 19, 1896.