36    385
133    437

36    385
106a   ³563

WILLIAM A. TURNEY

*v.*

RICHARD WILTON *et al.*

1.   TRUSTEES OF STATE BANK — *when authorized to sue in corporate name of bank.*   Notwithstanding the expiration of the charter of the State Bank, the trustees of the bank, appointed under the act of the General Assembly of March 1, 1847, had authority to prosecute suits in the corporate name of the bank.

2.   As the trustees of the Bank of Illinois had the authority to commence and prosecute suits in its corporate name, it follows that the trustees of the State Bank, having the same powers as those trustees, had a like authority, notwithstanding its charter, as to other persons, was to expire before the trustees were to be appointed.

3.   LEGISLATIVE CONSTRUCTION — *not conclusive when made from misapprehension.*   Though great weight should be given to legislative construction, it is not conclusive upon courts, and its weight is always lessened, when it can be seen such construction arose from misapprehension.

4.   INTENTION OF LEGISLATURE — *to prevail over such legislative construction.*   Courts are required to give effect to the *intention* of the legislature, and in so doing must disregard a legislative construction given under a misapprehension, whenever such construction is inconsistent with the legislative intention.

5.   It never was the design of the legislature by any of the acts on this subject, to dismiss suits which were pending, and let the debtors go free.

6.   STATUTE OF USES.   The trustees of the State Bank having the right to prosecute a suit for foreclosure of a mortgage, pending in February, 1848, to a final decree in the corporate name of that institution, a decree of foreclosure in such suit was valid; and if, upon a sale under the decree, the land was bid

off in the name of the bank, a deed from the master to the bank by its corporate name would be for the use of the trustees, and the statute of uses would transmit the legal estate to them.

APPEAL from the Circuit Court of Clinton county; the Hon. S. L. BRYAN, Judge, presiding.

This was a bill for injunction. The bill sets forth that the trustees of the State Bank of Illinois are the owners in fee simple of the south-east quarter of Section 17, Township 2 north, Range 2 west of third principal meridian. That the appellant purchased said land in fee simple on the 26th November, 1862, and received from the trustees a bond for a deed, which is made an exhibit. That appellant is the equitable owner of said land. That he is advised certain persons, to wit, Harry Wilton, Richard Wilton, John B. Roper, and John Lemon, their agents, servants, etc., are felling and destroying the timber on the land, and committing waste. Bill prays for an injunction.

Injunction was granted by Judge Bryan, and writ of injunction was issued December 31st, 1862.

Harry Wilton and John B. Roper answer the bill, and disclaim any trespass on the land.

Richard Wilton answers, that as to the east half of said south-east quarter, he denies and disclaims any entry or ownership thereof; but as to west half of said south-east quarter, that he claims to be the owner thereof, and denies that the State Bank hold any legal title thereto, otherwise than a mortgage; that they never held the fee simple. He admits that the bank held a mortgage, executed by Thomas Wilton, as security for money loaned him, which was executed previous to 1839, but denies it was legally foreclosed, and only exists as a lien. He admits that on the 16th of May, 1849, the bank, by the style of the "President, Directors and Company of the State Bank of Illinois," had a decree of foreclosure in the Clinton Circuit Court, of a mortgage against said west half of said south-east quarter, but charges that before that time that corporation had expired, and before final judgment, and that no suit could be

prosecuted thereafter to final judgment, except in the name of the trustees of the bank. That he holds title from Harry Wilton, and he from Thomas Wilton. He denies that the sale of the master in chancery to the president, directors and company, conveyed any title. Denies trespass and waste.

Replication to this answer.

The following is a synopsis of an agreed statement of facts, upon which the cause was submitted in the court below, and which is a part of the record:

The State Bank was incorporated in 1835. In 1843 an act was passed to put the bank in liquidation. In 1845, 1847, and 1849, other acts were passed, having reference to the State Bank, all of which are made part of this agreement. On 31st October, 1848, the president, directors and company made a deed of assignment to the trustees of all the lands, effects, choses in action, etc., belonging to the bank, which deed is in the agreement.

On the 30th October, 1835, Thomas Wilton made his promissory note to the president, directors and company of the bank for the payment of $400 with interest; and on same day Wilton and his wife, to secure the payment of this note, made to the president, directors and company a mortgage of said west half of this south-east quarter. The note having become due, the president, directors and company, on 22nd February, 1848, filed bill to foreclose the mortgage against Wilton and wife. At October term, 1848, complainants took leave to amend bill and make Harry Wilton a party defendant. On 17th October, 1848, Harry Wilton entered his appearance. On 15th May, 1849, a rule was taken to answer bill. On 16th May, 1849, a decree was entered of record in favor of the president, directors and company, and against Thomas Wilton and wife, for $611.16. On 16th October, 1850, the master in chancery filed his report, stating that on 19th June, 1850, he sold and conveyed the mortgaged premises to the president, directors and company; which report was approved. On 14th October, 1850, the master made a deed of the premises to the president, directors and company.

The board of directors of the company, on March 3rd, 1847,. accepted the provisions of the act of the legislature passed in that year. On 31st October, 1848, Governor French appointed the trustees mentioned in the deed of assignment. On 21st March, 1859, John Calhoun resigned, and James Campbell was appointed to fill the vacancy.

On 26th November, 1862, Campbell and Manly, trustees, executed a bond for a deed to William A. Turney. On 28th November, 1862, Manly, Ridgely and Campbell, trustees of the bank, in pursuance of this bond, made and delivered to Turney, a deed for the land in controversy.

It is further agreed, that Thomas Wilton, after the mortgage mentioned was executed, and before the final decree mentioned, sold the land to Harry Wilton, and since then Harry Wilton had conveyed to Richard Wilton.

Upon the foregoing state of facts the cause was submitted to Judge Bryan, at August term, 1863, of Clinton Circuit Court, who ordered the injunction to be dissolved and the bill dismissed. Complainant prayed an appeal, which was allowed, and, by agreement, the cause was brought to the Second Grand Division.

The question presented to the court below for decision, was in regard to the title to said west half of said south-east quarter, and the same question is presented to this court.

By an agreement attached to the record, it is stipulated, that the only point presented to the court, is, in regard to the *title* to the land in controversy, proof of trespass, etc., having been waived.

Mr. Wm. H. Underwood, and Mr. Milton Hay, for the Appellant.

Mr. H. K. S. O'Melveny, for the Appellees.

Mr. Justice Breese delivered the opinion of the Court:

On the third day of October, 1835, Thomas Wilton made his promissory note for the sum of four hundred dollars, payable

to the president, directors and company of the State Bank of Illinois, with interest, and to secure its payment, executed a mortgage on the premises in controversy.

On the twenty-second day of February, 1848, the bank filed a bill in chancery in the Clinton Circuit Court, to foreclose. he mortgage, against Thomas Wilton and wife. At the October term, 1848, Harry Wilton was made a party to the suit, and on the seventeenth of October, 1848, he entered his appearance. On the sixteenth day of May, 1849, a decree of foreclosure was rendered in favor of the bank, for the sum of six hundred and eleven dollars and sixteen cents, and the premises were ordered to be sold for its payment. On the nineteenth day of June, 1850, the premises were exposed to sale by the master in chancery, and were bid off in the name of the bank. The sale was reported to the court and approved, on the sixteenth of October, 1850. The master conveyed the premises to the bank by deed, dated October 14, 1850. The appellant derives his title through certain trustees of the bank, appointed under the act of first of March, 1847. The appellee claims title under Harry Wilton, who derived his title from Thomas Wilton.

The case turns upon the validity of this decree of foreclosure and the subsequent proceedings under it, the appellee insisting that they are void, for the reason that the charter of the bank expired on the first day of November, 1848, and its trustees had no authority to prosecute a suit or do any other act, in the name of the bank, after that time. He insists that a decree, pronounced in favor of a corporation, after the expiration of its charter, must be regarded as a nullity.

It is agreed by the parties, that the State Bank was incorporated in 1835, and in 1843 an act of the General Assembly was passed to put this bank in liquidation. In 1845, 1847 and 1849, other acts were passed having reference to the State Bank, all of which are made part of this agreement. On the 31st of October, 1848, the president, directors and company made a deed of assignment to trustees of all the lands, effects, choses in action, etc., belonging to the bank.

It is agreed that the board of directors of the State Bank, on March 3rd, 1847, accepted the provisions of the act of the legislature passed in that year. Trustees were appointed by the governor on the 31st of October, 1848, and on the 26th of November, 1862, they executed a bond for a deed to appellant, and afterwards, on the 28th of November, 1862, they executed to him a deed for the land in controversy.

To determine the point made by the appellee, it is necessary to examine closely the several acts of the legislature to which reference has been made.

The first act is the act of January 24, 1843, and is entitled "An act to diminish the State debt, and put the State Bank into liquidation." (Sess. Laws 1843, p. 21). That act required the bank to go into immediate liquidation under the direction of its officers, and it was inhibited thereafter to discount notes, lending money, buying or selling bills of exchange, issuing paper for circulation, receiving deposits, or doing other acts usual for banks, excepting to close its affairs, to collect and secure debts due to, and to pay debts due from, the bank; to sell its real and personal estate, issue certificates for balances, as is provided in the act; to renew the notes of its debtors from time to time, upon the payment of installments of one-fifth of the debt at each renewal; and to sue and be sued in relation to all its dealings; for which purposes, and none others whatever, the charter of the bank was continued in force for the term of four years from March 4, 1843, and no longer. The State, in pursuance of the provisions of the act, transferred to the bank two million and fifty thousand dollars of its stock, and received therefor an equal amount of State indebtedness.

Thereafter, the State held fifty thousand dollars of the stock, and withdrew all the State directors except the bank commissioner, who was, *ex officio,* a director.

By the act of March 1, 1847, (Sess. Laws 1847, p. 20), the president, directors and company were allowed the use of the charter until the first day of November, 1848, to enable them to close its affairs, but subject to the restrictions contained in the act of January 24, 1843, and acts supplementary thereto.

If the affairs of the bank were not closed before the first day of November, 1848, then the governor was required to appoint three trustees, whose duty it should be to take charge of all assets of the bank, and close its affairs, they being governed in so doing, by the provisions of an act entitled " An act supplemental to an act to reduce the public debt one million of dollars, and to put the Bank of Illinois into liquidation," approved February 28, 1845, so far as the said provisions were applicable.

It is evident, from these acts, that the officers of the bank had no power to use its corporate name for any purpose after the first day of November, 1848, and it must be conceded, that the acts of 24th January, 1843, and March 1, 1847, repealed the charter of the bank, and that its corporate existence ceased for all purposes on the first of November, 1848, except such purposes for which its existence was continued under the last mentioned act.

The question then arises, were the trustees appointed under the act of March 1, 1847, authorized by it to prosecute suits in the corporate name of the bank?

They were authorized to take charge of its assets, and to close its affairs, and their powers and authority for that purpose were the same as those conferred upon the trustees appointed to take charge of the assets and close the affairs of the Bank of Illinois, under the act of February 28, 1845. We must, therefore, ascertain the nature and extent of the authority of the trustees appointed to close the affairs of the Bank of Illinois, in order to determine the extent of the authority of the trustees who were appointed to close the affairs of the State Bank.

To ascertain the precise nature of the powers conferred upon the trustees appointed to close the affairs of the Bank of Illinois, a reference to the legislation had in regard to it is necessary. The act of 25th February, 1843, entitled " An act to put the Bank of Illinois into liquidation," (Laws of 1843, p. 27), repealed the act incorporating that bank, and all acts supplementary thereto, and vested its real and personal estate in three commissioners, who were to close its affairs. This act was, by

its terms, to take effect from and after the 3rd March, 1843. The act of February 25th, 1843, entitled " An act to reduce the public debt one million of dollars, and to put the Bank of Illinois into liquidation," suspended the provisions of the act — just mentioned — to put the bank into liquidation for the term of four years from the 4th March, 1843 ; and provided that the bank should go into immediate liquidation under the direction of its officers; and it was prohibited from transacting business in the same manner, and to the same extent, as the State Bank; and was allowed to transact such enumerated business as was necessary to close its affairs, and to sue and be sued in relation to all its dealings ; for which purposes, and none other whatever, the charter was continued for the term of four years from the 4th March, 1843, and no longer.

Before the expiration of the time thus allowed the officers of the Bank of Illinois to close its affairs, at the end of which time its charter was repealed, the legislature passed the act of 28th February, 1845, entitled " An act supplemental to an act to reduce the public debt one million of dollars, and to put the Bank of Illinois into liquidation, " (Laws of 1845, p. 246), by which trustees were appointed, to whom all the assets of the bank were to be assigned and transferred. A tabular statement of the assets was to be made and filed in the office of the secretary of State, and a formal transfer of the same to the trustees was to be executed by the officers of the bank. ' The trustees were expressly authorized to collect all debts due to the bank, and were required to collect the same, excepting stock notes, the payment of which was not to be enforced until the other assets were exhausted, or the interests of the creditors should demand their collection. The charter of the bank being in force at the time when the assignment was made, under the provisions of the act last mentioned, the assignees had authority to use the name of the bank during its corporate existence, so far as was necessary in order to collect debts, without any especial authority from the bank or the legislature. The assignment was, of itself, sufficient authority. The provisions of the act clearly confer upon the trustees the power to institute and

prosecute suits; and as there was no provision made for the institution or prosecution of such suits in the name of the trustees, the legislature must have intended their commencement and prosecution under the rules of the common law. We are of the opinion, therefore, that the trustees who were appointed to close the affairs of the Bank of Illinois under the act of 28th February, 1845, had authority to institute and prosecute suits in its corporate name. That act authorized the trustees appointed thereby to exercise the powers which it conferred for the term of the four years succeeding its passage; and were it necessary in this case, we should hold that the last mentioned trustees were authorized to sue in the name of the bank until the expiration of that time, notwithstanding its corporate existence, as to other purposes, expired on the 4th of March, 1847. The trustees were to exercise all the powers conferred upon them without hindrance, other than that which the act provided, any law to the contrary notwithstanding. Having stated the powers and authority conferred upon the trustees appointed under the act of 1845, to take charge of the assets and close the affairs of the Bank of Illinois, we are thereby enabled more clearly to define the nature and extent of the powers conferred upon the trustees appointed to close the affairs of the State Bank, as the latter were to have the same powers the former had. The act of 1st of March, 1847, should be construed as if the provisions of the act of 1845, so far as applicable, were incorporated into itself. Whenever an act of the legislature confers powers which are recited in another act, the act to which reference is made, is to be considered and treated as if it were incorporated into, and made a part of, the act which contains the reference. Thus construed, the act of 1st of March, 1847, confers upon the trustees to be appointed under it, power to collect all debts due to the bank, in the same manner that the trustees who were appointed to close the affairs of the Bank of Illinois were authorized to collect debts due to *that* institution. As the trustees of the latter bank had authority to commence and prosecute suits in its corporate name, it follows that the trustees of the State Bank were to have a similar authority,

25 — 36 ILL.

notwithstanding that its charter, as to other purposes, was to expire before the trustees were to be appointed. The trustees of the State Bank were to have the same authority to use its corporate name that was conferred upon the trustees of the Bank of Illinois to use its corporate name ; and so much of the act of 24th January, 1843, as was inconsistent with the exercise of this power was necessarily repealed. The trustees of the Bank of Illinois were required to close its affairs, if practicable, on or before the 28th of February, 1849 ; and to relieve them in the performance of their duty in this respect, the act of 10th February, 1849, was passed, which extended the time to the 1st January, 1851.

We are, however, of the opinion that the trustees who were appointed under the act of March 1, 1847, were not required to close the affairs of the State Bank on or before the 28th of February, 1849. The act did not contemplate their appointment until the 1st of November, 1848, and they could not, therefore, have fulfilled their duties in that brief time. The legislature foresaw that the affairs of that bank might not be closed until after the 4th of March, 1849, and so, required interest at the rate of six per cent. per annum, on all certificates issued by the bank in pursuance of the act of 1843, and on all notes issued by it which were in the hands of school commissioners or counties, or of the treasurer of any school district at the time the act passed, to be paid from and after March 4th, 1849, until they were taken up. The manner of closing the affairs of the bank was designed to avoid an oppression of its debtors ; and the time allowed them in which to discharge their liabilities shows that the legislature did not intend to require its affairs to be closed at a period so early.

The requirement of the act of 1845, in regard to the time in which the trustees appointed under it were to discharge their duties, was inapplicable to the trustees appointed under the act of 1847 ; and therefore no legislative act was necessary to extend the time in which they were to discharge their duties, as in the case of the trustees appointed under the act of 1845. The legislature understood that suits had been instituted in the

name of the Bank of Illinois by its trustees; and provision was made for their continuance by the "Act for the relief of the assignees of the Bank of Illinois, and to extend the time for the liquidation of the affairs of the said bank," approved 10th February, 1849. The direction of the act of 1845, to the trustees appointed under it, to close their trust within four years, was probably understood as terminating their powers at the expiration of that time; and the act of 1849 (last named) was evidently passed under that misapprehension. So the expiration of the charter of the State Bank was undoubtedly understood as depriving the trustees who were appointed to close its affairs, of the right to sue in its name, as it would have done had not the power to use it been given by the act of 1847; and hence the passage of the act authorizing the trustees of the State Bank of Illinois to maintain suits at law, (approved 10th February, 1849.)

While great weight is to be given to legislative construction, it is not conclusive upon courts; and its weight is much lessened when such construction arose, evidently, from misapprehension. All the provisions of the last mentioned act of 10th February, 1849, can be held cumulative, consistently with the construction we have given the previous acts. The act of 1849 was an enabling one, and was not intended to deprive the trustees of any of the powers which they then possessed. Courts are required to give effect to the *intention* of the legislature, and in so doing must disregard a legislative construction given under a misapprehension, wherever such construction is inconsistent with the legislative intention. *Tyson* v. *Postlethwaite*, 13 Ill. 728. It would be contrary to the intention of the legislature to give effect to an enabling act as a legislative construction, so as to deprive the trustees of powers which they then possessed. We are of the opinion that the trustees of the State Bank had authority to prosecute the suit pending in February, 1848, against the Wiltons to a final decree in the corporate name of that institution. It never was the design of the legislature by any of the acts on this subject, to dismiss suits which were pending, and let the debtors go

free.   The decree in that suit was a valid one, and we have only to consider the effect of the deed from the master in chancery to the bank by its corporate name.

It is evident the conveyance was for the use of the trustees. This use is sufficiently manifested by the acts of the legislature we have cited, and by the deed of assignment of the bank to the trustees.   2 Washburn on Real Property, 132.   The use being vested in the trustees, the statute of uses transmitted the legal estate to them.

The decree of the court below, for the reasons given, is reversed, and a decree here, that defendants be perpetually enjoined from entering upon or trespassing upon the said west half of the south-east quarter of Section seventeen, in Town two north, in Range two west of the third principal meridian.

*Decree reversed, and decree here.*