C. H. REIMERS, as Receiver of the Security State Bank of Courtenay, North Dakota, Respondent, v. L. H. LARSON, Appellant.

C. H. REIMERS, as Receiver of the Security State Bank of Courtenay, North Dakota, Respondent, v. LARS NELSON, Appellant.

C. H. REIMERS, as Receiver of the Security State Bank of Courtenay, North Dakota, Respondent, v. J. H. ALBRECHT, Appellant.

(40 A.L.R. 1177, 202 N. W. 653.)

**Venue — action to realize upon superadded statutory liability of bank stockholders may be brought in county where defendants reside.**

1. Under chapter 137 of the laws of 1923, an action brought by the receiver of an insolvent bank against stockholders to realize upon the superadded statutory liability, may be brought in the county where the defendants reside.

**Banks and banking — stockholders sued on superadded statutory liability may not offset indebtedness owing to him by bank.**

2. In an action by the receiver against stockholders to realize upon the superadded liability, under § 5168 of the Compiled Laws of 1913 and chapter 53 of the Session Laws of 1919, a stockholder may not offset the indebtedness owing to him by the bank.

**Appeal and error — instruction that burden was on bank directors sued for superadded liability to show by preponderance of evidence that they were not stockholders held not prejudicial.**

3. Under the facts disclosed in the record, it is held that an instruction to the effect that the books of the bank were presumed to be correct, and that the fact that the defendants were officers made the presumption stronger, and that

---

Note.—(2) Right of stockholder to set off indebtedness of corporation against statutory superadded liability, see annotation in 40 A.L.R. 1183; 7 R. C. L. 411; 2 R. C. L. Supp. 378.

the burden was upon the defendants to establish that they were not stock-holders by a fair preponderance of the evidence, was not prejudicial to the defendants.

Opinion filed February 5, 1925.

Appeal and Error, 4 C. J. § 2887 p. 916 n. 31.   Banks and Banking, 7 C. J. § 108 p. 517 n. 23; § 507 p. 737 n. 5.   Equity, 21 C. J. § 207 p. 206 n. 90.

Appeal from the District Court of Stutsman County, *Jansonius, J.* Affirmed.

*Lemke & Weaver,* for appellant.

While the books and records are prima facie evidence as to who the owners of the stock in the bank are, yet such prima facie evidence is overcome by proof to the contrary, and the general rules as to the sufficiency of evidence applies in this class of cases.   (7 C. J. Banks & Banking, § 115).

While in certain cases where a person *knowingly* permits his name to appear upon the stock books as a shareholder, he may be estopped to deny his liability, but in such a case it must be proven by a fair preponderance of evidence that such stockholder had knowledge that his name was upon the books and records as a stockholder before it became insolvent.   (3 R. C. L. § 28, Banks.)

"The liability of a stockholder, then, under the statute, having been settled as a debt due from the stockholder to the creditor, *there can be no valid reason, it seems to us, why a stockholder, who is also a creditor should not be entitled as a matter of equity to set up as an equitable defense the debt of the bank to him against his own liability."* Cahill v. Original Big Gun Beneficial etc. Assoc. 50 Atl. 1044.

"The law is well settled that a depositor can set off his deposit as against a claim of an insolvent bank." 7 C. J. page 852, § 350, Banks and Banking; Re Maritime Bank, 27 N. B. 295.

*"Such a creditor should not be required to contribute to a fund in which he is entitled to share except to the extent of the difference between what is owing to him and what he owes."* Mosler Safe Co. v. Guardian Trust Co. 208 N. Y. 524, 101 N. E. 786.

*C. B. Craven,* for respondent.

"On the resignation or removal of the receiver of an individual or

a corporation, pending an action brought by or against him as such receiver, the action may still be prosecuted in his name." 1 C. J. 150 and cases cited, note 96.

The general rule is that a court will not take judicial notice of proceedings in another cause, although such cause may have been tried in the same Court. The decision of a cause must depend upon the evidence introduced. Murphy v. Citizens Bank, 12 Ann. Cas. 537 and note; 23 C. J. 113, notes 40, 41; Amundson v. Wilson (N. D.) 91 N. W. 37.

"The right of a bank stockholder to set off the indebtedness of the bank to him in a suit by the receiver, depends upon the nature of the cause of action against the stockholder."

The nature of the liability, if created by statute, depends upon the phraseology of the statute. The general nature of the statute creating a double liability on part of stockholders of banks is one in favor of all who are creditors at the date of the bank's failure. Tardy's Smith, Receivers, 2d ed. § 483, p. 1430.

"That the one whose name appears on the stock books is presumed to be the real owner unless someone else is clearly shown to be such, is undoubtedly the rule. It is equally clear that this is a rebuttable presumption." See 5 Cyc. 422, and cases cited, note 3.

"All persons unaffected with notice to the contrary, are at liberty to act upon the faith of the title of the stock being where it appears upon the corporation books to be." Fisher v. Essex Bank, 5 Gray (Mass.) 373.

"Where the name of an individual appears on the stock book of a corporation as a holder, this is presumptive evidence that he is so. The burden of proof is thrown then upon the defendant to show the contrary." Hoagland v. Bell, 36 Barb. (N. Y.) 57.

*Conmy, Young & Burnett,* for L. R. Baird, Receiver.

BIRDZELL, J. Each of the defendants was sued in the district court of Stutsman county in an action to recover on account of an alleged liability as a stockholder in the Security State Bank of Courtenay, a failed bank. The actions were consolidated for trial and are likewise consolidated on appeal. The complaint in the Larson case alleges that the capital stock of the bank was $25,000, divided into 250 shares of

$100.00 each; that previous to February, 1921 the corporation was engaged in the banking business and that at that time it was found to be insolvent, with an indebtedness exceeding $200,000 and assets of not to exceed $100,000; that the defendant Larson held 35 shares of the capital stock of the total par value of $3500; that notice had been given to him of an assessment of the stockholders equal to the stock held and demand made for the payment thereof and that there was a refusal to comply with the demand. The answer admits the existence of the bank and its capital stock at $25,000. It denies ownership in·Larson of more than ten shares and contains an offer to pay the assessment of $1,000 on account of the ten shares admittedly owned. There is further pleaded an alleged indebtedness by the bank to Larson, existing at the time the bank was closed, of $1724 on account of a deposit in the bank and a further sum of $1075 on account of collections which the bank had made on behalf of the defendant Larson in that sum. In an amended answer there is a further claim of indebtedness owing by the bank to Larson on account of his having paid a certain portion of an alleged liability of the Security State Bank to the American Exchange Bank of Valley City. It pleads that there was a note for $7245 given by the Security State Bank of Courtenay to the American Exchange Bank and that this note was paid in April, 1921 by the giving of four individual notes, one of which was for $1800 and signed by Larson. The issues in the other cases are substantially the same, varying principally as to amounts. The defendants Larson, Nelson and Albrecht were original organizers of the Security State Bank of Courtenay and were members of its board of directors. In June, 1918 at an adjourned stockholders' meeting it was voted to increase the capital stock of the bank from $15,000 to $25,000 and the selling price of the additional stock was fixed at 115. In the fall of 1918 steps were taken to dispose of the increased stock in the vicinity of Courtenay. At that time the defendants Larson, Nelson and Albrecht, together with the cashier of the bank, one Ehred, decided to negotiate a loan from the American Exchange Bank of Valley City for the amount necessary to increase the capital stock as planned and to provide $1500 as surplus. This loan was made upon the note of the directors and the amount of it was credited to the account of J. H. Albrecht, trustee, and later transferred to the capital stock and surplus

account of the bank. The defendants deny knowledge of the issuance of the stock, but at the time the bank was closed its books and records indicated that it had been issued to persons named, including the three mentioned defendants.

The principal contentions on this appeal concern questions of law. It is first asserted that, in view of chapter 137 of the Session Laws of 1923, which is an act to provide administration of affairs of insolvent banks, the district court of Stutsman County was without authority to entertain the actions brought by the receiver and that the receiver, who was appointed before chapter 137 took effect, had been superseded by a receiver appointed under that act and consequently was an improper party plaintiff. It did not appear that the plaintiff receiver had been checked out or supplanted by the new receiver as provided in § 8, chapter 137, Laws of 1923. We are of the opinion that these contentions find no support in the law relied upon. There is no provision in chapter 137 of the Laws of 1923 which, in our opinion, is susceptible of the construction adopted by the appellant. That chapter, as we view it, places the jurisdiction of insolvency proceedings affecting banks in the district court of Burleigh County, but it does not affect the venue of actions brought by or on behalf of such banks where venue is determined by the residence of the defendant under other statutory provisions. (See State v. First State Bank, ante, 83, 202 N. W. 404; State v. First State Bank, ante, 231, 202 N. W. 391; Baird v. Lefor, ante, 155, 38 A.L.R. 807, 201 N. W. 997.

The next question presented is the right of a stockholder to offset against his statutory liability the indebtedness of the bank to him. It is claimed that at the time the bank failed each of the defendants had various amounts on deposit and that, in addition, the defendant Larson had a sum in the bank resulting from the collection of certain notes which he had placed there for collection. The trial court charged the jury that they should not consider the matter of the liability of the bank to the stockholders, as it could not be set off against the receiver's claim for double liability, and during the progress of the trial rulings were made on the admission of evidence consistent with the view stated in the instruction. Error is predicated upon these rulings as well as upon the instruction. It is contended that justice to the stockholders requires that the setoff be allowed. The following quotation

from the appellant's brief will, perhaps, best illustrate the contention: "Suppose that there are two stockholders of a bank that subsequently becomes insolvent, one of them deposits a thousand dollars in a bank of which he is a stockholder and the other in some other bank. In this case the one would lose not only his thousand dollars, if a setoff were denied him, but would be compelled to pay an additional thousand dollars while the other person would withdraw his thousand dollars and pay his double liability. There is certainly no justice or equality in such a rule of law." It seems to us that this argument fails to take into consideration the position of those for whose protection the added liability is imposed. It is not the purpose of the statute, as we view it, to balance the inconvenience entailed among the various stockholders. Rather, the purpose seems to be to create a fund to which the creditors may resort for the satisfaction of their claims ratably, and to add to the security of the institution. Stockholders in banks frequently carry deposits in the institution and, if they were permitted to offset the amount of their deposits against their liability as stockholders, it is apparent that, in case of failure, they, as depositors, would occupy a position superior to other depositors in that their deposits would operate to reduce the amount of the statutory liability. To the extent that this liability would be reduced the depositors who were not stockholders would be deprived of the benefit of the superadded liability and those who were stockholders would reap the entire benefit. By the sheer force of the construction contended for by the appellant, then, the statute itself would be made to declare, in effect, in case of insolvency, a preference in favor of the stockholding depositors or creditors. And, if it should happen that each of the stockholders carried deposits equal to or greater than the amount of his stock, the statutory liability would be altogether nil.

In the presentation of this case, counsel on both sides have given the court the benefit of extended briefs discussing the numerous authorities which have spoken upon the question in hand. Conflicting views of the various courts have been emphasized, and our attention has been directed to the considerations that are apparently responsible for the different conclusions reached.

No attempt will be made to reconcile the authorities cited or to point out in detail wherein they are conflicting. From our examin-

ation of them, however, we are impressed that certain consistent principles are well established:

(1) Where the stockholder is liable to the corporation, as upon an unpaid subscription, or where there is an added statutory liability directly to the corporation so that the right of the creditor to realize upon the liability of the stockholder may be said to be derived from the corporation, the stockholder may set off the liability of the corporation to him.

This principle is well illustrated in the case of Jerman v. Benton, 79 Mo. 148, at page 161 of the opinion, as follows:

"The unpaid stock of a stockholder constitutes a portion of the assets of the company. When demanded by the company he is permitted to reduce his liability by a counter-indebtedness of the company to him. It is said that there is a mutual indebtedness here which authorizes the offset. When the same liability for unpaid stock is subjected to the behests of an execution creditor because it constitutes available assets of the company, why should he be prevented from showing that the company is indebted to him in an amount which leaves the enforcement of the liability against him, irrespective of counter-indebtedness, devoid of the equity which naturally suggests the adjustment of cross-demands."

See also 2 Tardy's Smith, Receivers, § 483.

(2) Or where the stockholder is directly answerable to creditors of the corporation to a limited extent and where, as is generally permitted, he may himself occupy the position of a creditor, he may be permitted likewise to off set the corporate liability to him, since he has the same right to be paid the corporate debt owing to him as has the pursuing creditor. This equal right to be paid, especially when coupled with practical consideration against circuity of actions and inability of a stockholder in the first instance to apply his own liability in satisfaction of the corporate debt to him, affords a strong equitable reason for a setoff. Jerman v. Benton, supra, at p. 162; 7 Fletcher, Cyc. Corp. § 4246; Hood v. French, 37 Fla. 117, 19 So. 165; Boyd v. Hall, 56 Ga. 563; Crocker v. Ball, 10 Kan. App. 364, 59 Pac. 691; Musgrave v. Glen Elder Farmers' Alliance Co-op. Shipping & P. Asso. 5 Kan. App. 393, 49 Pac. 338; Pierce v. Topeka Commercial Secur. Co. 60 Kan. 164, 55 Pac. 853; Cahill v. Original Big Gun

Beneficial & Pleasure Asso. 94 Md. 353, 89 Am. St. Rep. 434, 50 Atl. 1044; Strauss v. Denny, 95 Md. 690, 53 Atl. 571; Mathez v. Neidig, 72 N. Y. 101; Wheeler v. Millar, 90 N. Y. 359.

(3) Where, however, the statutory liability imposed is a liability to contribute to a fund out of which creditors are to be satisfied ratably, or where the stockholder's liability is sought to be realized in an equitable action where all stockholders and creditors are before the court, the right of setoff does not exist, since it would necessarily operate to give a preference. Equality is equity. 7 Fletcher Cyc. Corp. § 4246, supra; 3 R. C. L. 398; Michie, Banks & Bkg. § 49; 2 Tardy's Smith, Receivers, 2d ed. § 483; Buchanan v. Meisser, 105 Ill. 638; Helm v. Smith-Fee Co. 76 Minn. 328, 79 N. W. 313; Barth v. Pock, 51 Mont. 418, 155 Pac. 282; Re Empire City Bank, 18 N. Y. 199; Van Tuyl v. Schwab, 165 App. Div. 412, 150 N. Y. Supp. 786; Lauraglenn Mills v. Ruff, 57 S. C. 53, 49 L.R.A. 448, 35 S. E. 387.

The real question, then, as we view it, is one of the interpretation of the statute under which the receiver is proceeding. "If the language of the act," says 2 Beach on Priv. Corporations, § 727, "be construed as indicating an intention on the part of the legislature to create a fund to which all shareholders are to contribute and from which the creditors are to be paid ratably, the shareholder must contribute his proportion thereto and then·come in with other creditors in the distribution of the corporate assets. But if the statute imposes upon shareholders a personal liability to creditors immediate and several, so that any creditor may institute an independent action against any shareholder for the enforcement of corporate debts, then a defendant shareholder may set off debts due from the company to himself."

And to like effect is Cook Corp. § 225; likewise, Cook Stock & Stockholders & Corp. 3d ed. § 225. This distinction has, perhaps, never been better stated than in the opinion of Denio, J., in Re Empire City Bank, 18 N. Y. 199, 227, wherein it is said:

"Jonathan Purdy appealed, because, as he contended and attempted to prove, he was a creditor as well as a stockholder of the bank. He claimed to set off the indebtedness of the bank to him against his liability. Under the manufacturing act, and in some other corporations, a creditor might sue a single stockholder, who might set up, in re-

duction of his liability, that he was also a creditor. In such a case no account could be taken, and it would not regularly appear but that the plaintiff's debt was the only one existing against the corporation, nor could it be shown but that there were other stockholders who were not creditors, whose liabilities were sufficient to satisfy the plaintiff's debt. In such a case the defendant ought to be exonerated to the extent of his own debt. But under a proceeding for winding up a corporation, where an account of all the debts and of the effects, including the aggregate liabilities of the stockholders, is required to be taken, there is no reason why a creditor should be in any better situation on account of being at the same time a stockholder. In the latter character the constitution and the statute make him liable to the creditors to an amount equal to his stock, or to his just proportion of that amount if the whole is not required; but as a creditor he is entitled only to a dividend in proportion to the other creditors. In case of a deficiency in means to pay all the debts, he must take his dividend, pro rata. But if he could set off his claim as a creditor against his liability as a stockholder, he might be paid in full, while the other creditors would receive only a part of the amount due them."

This court has heretofore held, in Davis v. Johnson, 41 N. D. 85, 171 N. W. 520, that where a receiver brings an action to recover upon the superadded liability under § 5128 of the Compiled Laws of 1913, as he is given express authority to do by chapter 53 of the Laws of 1915, the action is brought for the benefit of creditors, and in that connection the advantages of the receiver's action, as compared to actions by the individual creditors, was commented upon as follows (p. 90):

"The enforcement of the added liability by the receiver is manifestly the most desirable method and the one most in harmony with the scheme and spirit of our laws. It will better tend to protect and secure the rights of the different creditors of an insolvent bank than to require a creditor or creditors to enforce the added statutory liability against the different stockholders. All approved creditors of equal rank are placed upon an equal basis and will ipso facto receive the same proportionate shares. All questions of priority among creditors, predicated upon the time in which suit is brought, are eliminated. Needless litigation and expense is avoided. The entire affairs of the

corporation, including the adjustment of the liability of its stockholders, are subject to the control of and disposition by the court in a single action, and unnecessary delay and expense avoided."

There can be no doubt that the advantages of the receiver's action, as stated above, could not be realized if a construction of the statute were adopted under which stockholding creditors would constitute a preferred class. As indicated above, the authorities quite generally hold that where the stockholder is required to contribute to a fund to be disbursed to creditors ratably he is not entitled to interpose any counterclaim or setoff that would in effect constitute him a preferred creditor.

In view of the previous construction of § 5128 of the Compiled Laws of 1913, in the light of chapter 53 of the Laws of 1915, we are of the opinion that a stockholder in a bank, when sued by the receiver for the benefit of all the creditors, is not entitled to setoff against the superadded liability any indebtedness of the bank to him, and we are further of the opinion that the character of the indebtedness is immaterial. Of course, we do not hold that any fund which might have been held by the bank as trustee at the time it closed would be applicable to the claims of creditors. Neither do we understand from the record in this case that counsel for the appellants have undertaken to establish any trust relation with respect to any funds held by the bank. Rather, the contention here is that, if the bank were indebted to the appellants by virtue of any of the transactions enumerated, the stockholder's liability would be reduced by the amount of the indebtedness, and it is this contention that we find is not legally sustainable.

What has been said above answers the main contention of the appellants. But, it is urged that the appealing defendants were not the owners of the number of shares on account of which they were held liable and that the verdict against these defendants in the amount for which they were held might well have been different had the court not instructed the jury as it did. There was considerable evidence introduced on the question of the ownership of the shares, some of which might have warranted the jury in holding that the appealing defendants were not owners of the amounts appearing in their names on the books of the company. The court charged the jury that the books were presumed to be correct, and the fact that the defendants were

officers made the presumption against them stronger. He charged that the law presumed that every man in his private and official character did his duty until the contrary was proved, and that, having set up matters in defense which were contrary to the records as kept in the corporate books, the burden was upon the defendants to establish their defense by a fair preponderance of the evidence. We are of the opinion that these instructions were as favorable to the defendants as they could well be. The defendants were directors of the bank and as such they must be charged with knowledge of the fact that their names appeared on the records of the bank as the owners of the stock. Considering the length of time that these entries had been in the records and the statutes which make it the duty of the directors to examine and supervise the affairs of the bank, particularly §§ 5164, 5167 and 5182 of the Compiled Laws of 1913, the instruction in the instant case was altogether favorable to the defendants.

There is filed in this court a petition by the receiver, L. R. Baird, successor to C. H. Reimers. The petitioner, among other things requests that the appeals be remanded for the purpose of having him substituted as party plaintiff. In lieu of remanding the appeals, as prayed, an order of substitution will be made in this court and the order will be: Upon the petition of L. R. Baird, receiver, to be substituted as party plaintiff in lieu of C. H. Reimers, as receiver, the substitution is hereby made and the judgments appealed from are affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, JOHNSON, and BURKE, JJ., concur.