[File No. 6005.]

L. R. BAIRD, as Receiver of Farmers & Merchants State Bank, New England, North Dakota, Appellant, v. W. L. WHITMIRE et al.

H. A. BORCHERDING, Respondent.

(240 N. W. 479.)

Opinion filed January 22, 1932.

*Zuger & Tillolson (F. C. Heffron* of counsel), for appellant.

*Dullam & Young,* for respondent.

Burr, J. The plaintiff in winding up the affairs of an insolvent bank, brought this action to enforce the added liability of stockholders. The defendant Borcherding demurred to the complaint alleging:

1. That the plaintiff has not legal capacity to sue.

2. That there is a defect of parties plaintiff in this: that the creditors in whose behalf and for whose benefit this action is brought have not been made parties plaintiff; and that no reasons appear in the complaint for the failure to make them parties plaintiff.

3. That the complaint does not state facts sufficient to constitute a cause of action.

The trial court sustained the demurrer and the plaintiff appeals.

The complaint shows that the bank involved was closed on September 15, 1931 and that the plaintiff was appointed receiver on September 29, 1931. The complaint does not state when the bank was organized, that is, whether it was organized prior or subsequent to July 1, 1931, but the points involved are predicated on the theory that the bank was organized prior to the enactment of chapter 96 of the laws of 1931 which went into force July 1, 1931.

Section 5189 of the compiled laws of 1913 states when "A bank shall be deemed insolvent." Chapter 53 of the session laws of 1915 amended this section by taking it in its entirety and adding thereto provisions for the appointment of a receiver by the State Examiner and State Banking Board under stated conditions, giving such receiver power to "pay corporate debts *and enforce the individual liability of stockholders.*"

In 1923 the legislature provided an entirely new method for dealing with insolvent banks and in chapter 137 of the laws of that year, asked the Supreme Court of this State to assume "original jurisdic-

tion of the insolvency proceedings to liquidate and wind up the affairs of all insolvent state banks within the state, at the time of the taking effect of this Act, and all such as may become insolvent during its continuance." This court was authorized to appoint a commissioner to have general supervising control over the insolvency proceedings subject to review by this court, and when a bank became insolvent the petition for the appointment of a receiver was made immediately to this court. Section 8 of said statute provides that the receiver "shall have all the powers and authorities ordinarily possessed and exercised by receivers of insolvent corporations or *prescribed by statute* and the court shall have all the power and authority with regard to the administration and closing of the affairs of such banks as are ordinarily possessed and exercised by courts of equity over the affairs of insolvent corporations." This statute did not carry the customary section repealing any specific statute or "all acts or parts of acts in conflict with this Act," and expired by limitation on July 1, 1926.

In 1927 the legislature re-enacted chapter 137 of the laws of 1923 and incorporated the same, practically in its entirety, in chapter 99 of the laws of that year, including the quotations heretofore set forth. This chapter 99 has no specific repealing clause. Thus when chapter 137 of the Laws of 1923 and chapter 99 of the Laws of 1927 were enacted, and while these remained in force, chapter 53 of the laws of 1915, remained on the statute books unrepealed, except in so far as a later statute transcends an earlier one repugnant thereto.

The legislature of 1931 proceeded to codify the laws dealing with banks and banking by enacting chapter 96, which was approved March 12, 1931 and went into effect July 1, 1931. Most of the provisions of chapter 137 of the laws of 1923 and of chapter 99 of the laws of 1927 are included in this Act.

In § 22 of the legislature incorporated, and re-enacted practically verbatim, the provisions of § 5168 of the compiled laws, which says:

"The shareholders of every association organized under this chapter shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association made or entered into to the extent of the amount of his stock therein at the par value thereof, in addition to the amount invested in and due on such shares. Such individual liability shall continue for one year

after any transfer or sale of stock by any stockholder or stockholders."

Any variation in language makes no change in the sense or meaning.

This codification, in § 51a, contains the provision asking the Supreme Court to assume "original jurisdiction of the insolvency proceedings to liquidate and wind up the affairs of all insolvent state banking associations within the State;" and in § 51h authorized the appointment of a receiver "which receiver shall have all the powers and authority ordinarily possessed and exercised by receivers of insolvent corporations *or prescribed by statute* and the court shall have all the power and authority with regard to the administration and closing of the affairs of such banks as are ordinarily possessed and exercised by courts of equity over the affairs of insolvent corporations."

In § 50 of this chapter is found § 5189 of the compiled laws of 1913, as amended by chapter 53 of the laws of 1915, with the provision for the appointment of a receiver by the State Examiner eliminated therefrom, as provision is made for the appointment of a receiver by the court. This elimination takes from that chapter the provision that the receiver, when necessary has the power to, "pay corporate debts and enforce the individual liability of stockholders." Such provision is not found anywhere in chapter 96 of the session laws of 1931; but, as stated before, when this chapter was enacted chapter 53 of the laws of 1915 was in force, and remained in force until July 1, 1931. Chapter 99 of the session laws of 1927 was also in force and has never been repealed. Thus, when the legislature said the receiver "shall have all the powers and authority—prescribed by statute" it knew of the existence of chapter 53 of the laws of 1915, and chapter 99 of the laws of 1927 and of the powers specified therein.

This new law followed in the main, the plan for winding up insolvent banks set forth in this chapter 99 of the laws of 1927.

Section 69 of this chapter 96 of the laws of 1931 says that §§ 5146 to 5204 of the compiled laws of 1913, except §§ 5149, 5163 and 5191, and certain session laws for the years 1919, 1923, 1925, 1927 and 1929 "together with all acts amendatory thereof and all other acts or parts of acts repugnant or inconsistent herewith are repealed." It makes no special reference to chapter 53 of the laws of 1915, nor to chapter 99 of the laws of 1927, but this chapter 53 purports to amend § 5189 of the compiled laws, and therefore is repealed.

However, there must be some significance in the failure to specifically include chapter 99 of the laws of 1927 in the laws stated to be repealed.

Though chapter 96 of the session laws of 1931 is in fact a compilation and codification of most of the then existing laws dealing with banks and banking and enumerates sections of the compiled laws and chapters of the session laws which are repealed, and fails to include chapter 99 of the session laws of 1927, this failure can not be said to be an oversight. There are many session laws dealing with banks and banking which are not specified as being repealed such as chapters 91 and 93 of the laws of 1921, chapters 179 and 299 of the laws of 1923, chapter 220 of the laws of 1919 as amended by chapter 298 of the laws of 1923, chapters 93 and 171 of the laws of 1925, and many other statutes. In many cases the subject involved in these statutes is treated to some extent in the new law, but there are provisions which are not included therein and which can not be said to be inconsistent with or repugnant to the provisions of the new law.

While the general trend of the repealing clause when referring to sections of the compiled laws, is to specify the section repealed "together with all acts amendatory thereof" and not specify the session laws amending these sections, yet we find an incident such as the omission of § 5149 from the list of sections of the compiled laws repealed and in its place the statement that the amendatory chapter is repealed, for this section was amended by chapter 91 of the session laws of 1927.

The plaintiff is the general receiver of insolvent banks, appointed under the provisions of chapter 99 of the laws of 1927, and of chapter 96 of the laws of 1931.

The demurrant says, the plaintiff has no authority to sue because § 5168 of the compiled laws, was repealed by section 69 of chapter 96 of the laws of 1931, and therefore the responsibility of the shareholder has been abrogated, even though the same provisions are reenacted and incorporated in the laws.

. The general rule is that where the legislature, in a series of acts covering a period of time, decides to codify such laws and legislate upon matters involved in these acts so as to form a code dealing with the subject, and in this new code incorporates and re-enacts provisions of the old statute, so as to make the new law a harmonious code cover-

ing the entire subject sought to be governed by the legislature, the liabilities provided in the old sections and which have been re-enacted and incorporated do not lapse but are carried over into the new code.

This rule has been long recognized in this State. In Gull River Lumber Co. v. Lee, 7 N. D. 135, 73 N. W. 430, it is said "it is only when the provisions of a repealing statute are identical, or practically identical, with the provisions of the statute repealed, that the provisions can be considered as continuing in force without intermission." The rule is reiterated in Golden Valley County v. Lundin, 52 N. D. 420, 203 N. W. 317. Here this court said: "where a statute is repealed, and the repealing statute contains provisions identical or practically identical, with some of the provisions of the statute declared to be repealed, such provisions are not repealed but continue in force without interruption, so that all rights and liabilities that have been incurred thereunder are preserved."

While other jurisdictions may not have adopted this rule, nevertheless it has eminent authority to support it. The United States Supreme Court in Bear Lake & River Waterworks & Irrig. Co. v. Garland, 164 U. S. 1, 41 L. ed. 327, 17 S. Ct. 7, says: "A new statute should be considered as a continuation of the old one with the modifications contained in the new one, although it formally repeals the old statute, when it re-enacts its substantial provisions and the two statutes are almost identical." See also State ex rel. Time Ins. Co. v. Superior Ct. 176 Wis. 269, 186 N. W. 748.

That chapter 96 of the laws of 1931 is intended to apply to banking corporations in existence at the time the law was enacted is clear from section six of the act which says:

"Every corporation organized under the laws of this state for state banking associations or savings banks, and corporations, or other associations excepting national banks and trust companies, whose business in whole or in part consists of the taking of money on deposit, shall be held and are hereby declared to be state banking associations, and as thus defined shall be subject to the provisions of this act."

As stockholders in such corporations are subject already to the added liability because of the provisions of law then in force they remain subject to such provisions of the new act which carry forward and incorporate the same added liability into these new provisions. No

change of status is intended, differentiating corporations formed beforehand from any organized under the provisions of this new act.

When we consider the repealed statute and the new one adopted in its place, it is clear the legislative intent was to carry over into the new statute the added liability and all rights accrued thereunder.

Because § 70 of said chapter 96 provides a "saving clause" relating entirely to "punishment for any acts heretofore committed violating" any act for the regulation or conduct of banking repealed by the chapter, and has no "saving clause" for the civil liability does not affect the rule. Neither are we justified in reasoning that by implication it was the intent of the legislature that the old liability should cease when the new law came into effect, and then immediately another liability be created under the new law. The fact that the legislature codified the laws regarding banking and incorporated therein this added liability taken from the other laws is indicative of the legislative intent to continue the old statute in the new code without abrogating any rights or liabilities which arise thereunder. To hold otherwise would be to assume the legislature intended arbitrarily to benefit a few stockholders here and there, by relieving them of liability, while others would be burdened thereby. It is clear the legislature intended to adopt a statute which would embody most if not all provisions already in force. proven to be serviceable, make such additions and changes therein as experience indicated were wise, and at the same time continued in force the old law so far as applicable.

It is urged that the plaintiff has no right to maintain this action because he is merely the receiver of an insolvent bank; that this added liability of the shareholder is not an asset of the bank, but is for the benefit of the creditors themselves and in this respect the receiver does not represent the creditors and has no statutory power to enforce the liability; that the only persons having the power to enforce the liability are the creditors themselves who are not parties to this action; and that the legislature specifically repealed § 5189 of the compiled laws, though reincorporating most of its provisions in the new law; also repealed "all acts amendatory thereof," and as chapter 53 of the session laws of 1915 purports to amend such § 5189 such law is repealed and thus the powers granted the receiver are taken away.

This statutory liability, specified in section 5168 of the compiled

laws and incorporated and re-enacted in § 22 of chapter 96 of the session laws of 1931, is a liability for the benefit of the creditors; and is not an asset of the corporation. Baird v. McMillan, 53 N. D. 257, 260, 41 A.L.R. 177, 205 N. W. 682. See also Corrington v. Crosby, 54 N. D. 614, 621, 48 A.L.R. 660, 210 N. W. 342, 345; Converse v. Hamilton, 224 U. S. 243, 253, 56 L. ed. 749, 753, 32 S. Ct. 415, Ann. Cas. 1913D, 1292.

When the action is brought by the receiver to recover such liability the action is brought for the benefit of the creditors. Davis v. Johnson, 41 N. D. 85, 90, 170 N. W. 520. See also Reimers v. Larson, 52 N. D. 297, 40 A.L.R. 1177, 202 N. W. 653. It is true that ordinarily the receiver of an insolvent corporation stands in the place of the corporation itself, and that while under certain conditions he represents the creditors, he represents them because of their interest in the assets of the corporation; and generally this liability, not being an asset of the corporation but a special security for the creditors only, the creditors, and they alone may recover the same, unless power to do so is conferred upon the receiver by statute.

In Davis v. Johnson, supra, we held that "the receiver of an insolvent corporation may enforce against stockholders the added statutory liability prescribed by § 5168 of the compiled laws of 1913." This holding was predicated upon the statutory authority conferred by chapter 53 of the session laws of 1915. We held this authority did not add anything to the liability of the stockholders and merely affected the remedy. It is true the said chapter 53 of the session laws of 1915 was concerned largely with the receivers appointed by the state banking board and said that such receiver had the right when necessary to "enforce the individual liability of stockholders;" but in the Davis Case we held this law was applicable to receivers appointed by the court in similar cases.

It will be noted that the law which gives the receiver the powers "prescribed by statute" is not repealed, even though the law defining the power is repealed. Chapter 99 of the session laws of 1927 is not specified as being repealed by chapter 96 of the session laws of 1931, and the clause in the repealing section which says that "all other acts or parts of acts repugnant to or inconsistent herewith are hereby re-

pealed," does not effect a repeal, as this power is neither repugnant to nor inconsistent with provisions of the new law.

The fact that chapter 96 revises and amends certain laws and repeals inconsistent acts does not affect statutes which are omitted and not repugnant to its provisions. People v. Van Pelt, 130 Mich. 621, 90 N. W. 424.

Statutes must be construed as part of one great and uniform system of law and thus all statutes bearing upon the subject must be taken into consideration.

Permitting the receiver to recover the added liability does not violate any provision of chapter 96 or its spirit. "A general statute without negative words will not repeal by implication from their repugnancy the provisions of a former one which is special, local, or particular, or which is limited in its application, unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal." People ex rel. State Harbor v. Pacific Improv. Co. 130 Cal. 442, 62 Pac. 739. See also Territory v. McPherson, 6 Dak. 27, 30, 50 N. W. 351; Rodgers v. United States, 185 U. S. 83, 46 L. ed. 816, 22 S. Ct. 582; Lewis's Sutherland, Stat. Constr. 2d ed. 526. Thus failure to state specifically in the new chapter that the receiver has this power does not in itself cancel the power if it be found in the earlier one. It is said that the adoption of part of chapter 53 of the laws of 1915 and the failure to adopt this provision indicates the intention of the legislature to omit this power. It does have a bearing upon the intention of the legislature; but it is not conclusive. The intent of the legislature is gathered from the entire Act and all of the legislative proceedings leading up to its enactment.

When said chapter 99 of the laws of 1927 and chapter 96 of the laws of 1931 say the receiver has the powers "prescribed by statute" they mean the powers defined in existing statutes. They are not contemplating powers to be prescribed in the future, for future legislatures will take care of such matters. They refer to powers already in existence and among these powers is the power to enforce the added liability, for that power is read into chapter 99 of the session laws of 1927 and is described in chapter 53 of the laws of 1915. That the legislature so intended appears manifest from the provisions of chapter 96 of the

laws of 1931. As pointed out the legislature knew the power defined in chapter 53 of the laws of 1915, still in force, said the receiver shall have the powers prescribed by statute, and failed to repeal chapter 99. This requires us to ascertain the meaning of the provision, "prescribed by statute."

But though chapter 53 of the laws of 1915 be repealed does the repeal of that statute take away from the receiver appointed by chapter 99 of the laws of 1927 the power given to him by said chapter? It will be conceded that if chapter 99 of the laws of 1927 had said specifically the receiver had the power to enforce the added liability that the repeal of chapter 53 of the laws of 1915 would not take away that power. Why should it be said that the power is taken away simply because chapter 99 of the laws of 1927 instead of specifically stating what the power is says his power shall be the same as is already prescribed by statute? If the legislature intended to take that power from the receiver why did it not repeal the law which gave him the power instead of repealing the law which stated what that power was?

While chapter 53 of the laws of 1915, being an amendment of § 5189 of the compiled laws, is repealed because of the express repeal of said section of the compiled laws, "together with all acts amendatory thereof" this does not require us to give a broader interpretation to the repealing section than to other portions of the same act. The construction of this repealing section is a matter of statutory interpretation. Where the general intent of the legislature is plain, so that we can see therefrom the thought in the mind of the legislature, we must not construe § 69 so as to defeat such claimed purpose.

Frequently a statute is enacted which refers to a former statute. It is held in People v. Malsch, 119 Mich. 112, 75 Am. St. Rep. 381, 77 N. W. 638, that where a statute referred to a previous act the statute by such reference "drew the latter into itself, unaffected by the subsequent repeal." It is true that in this case the repeal substantially re-enacted the Act involved; but in the case at bar chapter 96 does substantially re-enact chapter 53 of the laws of 1915. True it eliminates the provision for the appointment of a receiver by the State Examiner and the State Banking Board and this elimination perforce took with it the description of his powers; but chapter 99 of

the session laws of 1927, as well as the statute under consideration both referred to the powers of a receiver conferred by chapter 53. Such reference drew that portion of the act into itself, "unaffected by the subsequent repeal" of said chapter 53. Thus when we attempt to ascertain what power the legislature had in mind when it said this receiver shall have the power prescribed by statute we take the powers then existing by force of statute, just as if the legislature had said he shall have the powers now prescribed by statute. Under the latter condition it could not be contended that a subsequent repeal of chapter 53 would affect the provision in this chapter 96 of the laws of 1931 that the receiver had the powers "now prescribed by statute" for to ascertain what those powers were we would be required to examine the code and session laws at the time of the adoption of the act to find out what the powers were. Such rule holds good in the construction of chapter 99 of the session laws of 1927 substantially re-enacted and with this provision which is not repugnant to or inconsistent with the law under consideration.

A statute which refers to and adopts another statute, is not repealed by subsequent repeal of such other statute. Sika v. Chicago & N. W. R. Co. 21 Wis. (2d ed.) 375. Here a statute referred to a notice required by § 3 of an earlier statute, and required such notice to be given. Subsequently the earlier statute was repealed; but it was held the repeal of such entire statute did not do away with the necessity of giving the notice specified therein and referred to in the later statute.

In Flanders v. Merrimack, 48 Wis. 567, 4 N. W. 741, it is said: "Where a statute still in force refers to one since repealed, the latter may be resorted to for the purpose of construing the former." This is the rule we are required to adopt in the instant case, when we desire to find out what are the powers "prescribed by statute;" for it is a part of the process of construing the term used in this chapter 99 of the laws of 1927 and chapter 96 of the laws of 1931.

In Nunes v. Wellisch, 12 Bush, 363, involving the construction of a local law which referred to an earlier general law it was held that the repeal of this general law did not repeal so much of the latter law as was made a part thereof, and the court said: "if one statute refers to another for the power given by the former the statute referred to is to be considered as incorporated in the one making the reference."

"Whenever an act of the legislature confers powers which are recited in another act, the act to which reference is made is to be considered and treated as if it were incorporated into, and made a part of, the act which contains the reference." Turney v. Wilton, 36 Ill. 385, 393.

It is immaterial that the act referred to may not be described by name if it can be ascertained otherwise.

There are many cases where a legislature, in enacting a law, refers to an older law already repealed. It is held that the reference to such provisions makes such parts of the old repealed law a portion of the new enactment. In Maclean v. Brodigan, 41 Nev. 468, 172 Pac. 375 we have a case where the legislature of Nevada in an act approved March 31, 1913 (chapter 284) specifically repealed a law enacted March 14, 1899, and then in March 1917 enacted a law wherein it said that the "electors of the State of Nevada in the military service of the United States may when called into such service vote in accordance with the provision of the act approved March 14, 1899." The court held that though the act of March 1899 had been repealed more than four years before yet when the court came to construe the latter law they would consider this old law to ascertain what was the method prescribed therein. It is true this is based upon the theory of revival of a portion of the old law and this theory of revival is the one adopted for similar decisions in other jurisdictions. See Lyles v. McCown, 82 S. C. 127, 63 S. E. 355, 17 Ann. Cas. 436. But other jurisdictions do not limit it to such principle and apparently prefer to consider the repealed legislation in the same light as any other source of general information which will tend to define terms, phrases and words. In Quinlan v. Houston & T. C. R. Co. 89 Tex. 356, 34 S. W. 738, 742, the general rule is stated as follows: "The repeal of an act, the provisions of which have been incorporated into another by reference to its title, does not repeal so much of the latter act as so incorporates it."

In Gaston v. Lamkin, 115 Mo. 20, 21 S. W. 1100, the court had under consideration the effect of the "repeal of an adopted statute, where the same was in force and effect at the time of its adoption" and said that such repeal "will not affect its validity or operation within the scope of its functions, as prescribed by the adopting act." The court said in the case cited:

"The general rule governing in such case seems to be that, where one statute refers to another for rules of procedure prescribed by the former, the former statute, if specifically referred to, becomes a part of the referring statute, and the rules of procedure prescribed by the earlier statute, so far as they form a part of the second enactment, continue in force, although the earlier statute be afterwards modified or repealed."

The principle seems to be that where the statute is referred to for the purpose of ascertaining the rules or definitions and is identifying the provisions regarding these rules, and definitions are incorporated in the new statute the same as if actually quoted, therefore the fate of the old statute is immaterial. In Schwenke v. Union Depot & R. Co. 7 Colo. 512, 4 Pac. 905, the court had under consideration an Act of Congress of July 1864 in which it was stated that an act of May 23, 1844 "for the relief of the citizens of towns upon the lands of the United States" (§ 5) was repealed; but in the same act it was stated that the execution of some of the provisions of that act "shall be controlled by the provisions of the said act of May 23, 1844." In construing this act of 1864 the court held that though the act of 1844 was expressly repealed by this act of 1864, yet the reference to the provisions of the act repealed was sufficient to make them a part of the new act because they were referred to. This situation is somewhat analogous to the one at bar. Chapter 96 specifically repealed chapter 53 of the laws of 1915 but at the same time said that the receiver provided for in this law of 1931 shall have the powers prescribed by statute which must have been, among others, the power given in chapter 53.

Thus when chapter 96 says the receiver shall have "all the power and authority ordinarily possessed and exercised by receivers of insolvent corporations or prescribed by statute" and "the court shall have all the power and authority with regard to the administration and closing of the affairs of such banks as are ordinarily possessed and exercised by courts of equity over the affairs of insolvent corporations" and we note that this is language identical with the provisions of chapter 99 of the laws of 1927, and when the uniform practice in this state since the enactment of such legislation is to give the receiver the power to enforce the added liability against the stockholders, and that the

enforcement of such liability is, in a great majority of instances, necessary for the winding up of the affairs of the bank, and there appears to be no other statutory authority prescribed it must be clear the legislature had this law of 1915 in mind. Knowing that chapter 53 of the laws of 1915, as construed by this court in the case of Davis v. Johnson, 41 N. D. 85, 90, 170 N. W. 520, gave this plaintiff such authority, that chapter 99 of the laws of 1927 said he had such authority because it is authority "prescribed by statute" and failing to repeal chapter 99 it is clear the legislature did .not intend to deprive the receiver of such power already granted.

That this is the proper construction seems more evident when we consider another section of the act under consideration. Section 57 of this act requires the county judge, when administering an estate or probating a will, to notify the state examiner of the name of the decedent, and to send him a copy of "the notice to creditors," and makes it the duty of the examiner to ascertain whether the decedent, at the time of his death, was the owner of any shares of stock in any bank or had owned shares of such stock "within the period of one year before the date of his death," and if the examiner finds the decedent did own such stock it is made his duty to "notify the bank in which said stock is held, or if it be a closed bank, then the receiver thereof, of the decease of such stockholder," and to file "a proper claim for such amounts, if any, as may be owing to· said bank, or .the receiver thereof, from the deceased by reason of the ownership or transfer of such stock. . . ." It is clear this requires the receiver to enforce the added liability against the estate of the deceased stockholder. Thus to hold that chapter 96 of the laws of 1931, by its repeal of chapter 53 of the laws of 1915, destroyed the power of the receiver to enforce the statutory liability renders nugatory the provisions of section 51h of this same chapter 96 which says: "the receiver shall have all the power and authority—prescribed by statute" when he already had power prescribed by statute to enforce the added liability, being power to enforce it against living stockholders, while at the same time we are required to hold that this same law gives him the power to enforce it against the estate of a deceased stockholder. To our mind the purpose of this § 57 referred to was to add to the powers of the receiver the right to proceed against the estate of the decedent by filing a claim

694

the same as an ordinary creditor would do and contemplated that he already had such power with reference to a living stockholder and this contemplated power was continued.

A review of legislative policy strongly indicates it to be the legislative supposition that a receiver appointed by the court already possessed such power, and the purpose of such laws involved herein is to wind up the affairs of insolvent banking corporations primarily to aid the creditors. Unpaid subscriptions to capital stock, notes and accounts due, other assets from which the creditors may be enabled to secure a dividend are all to be collected by the receiver. This added liability is for the benefit of the creditors. Heretofore the receiver collected this. Certainly the legislature must have supposed he continued to have the right to do so. To assume the legislature now intends that creditors must wait until after the affairs of the corporation are wound up and then commence independent suits against the stockholders to recoup themselves for losses, clog the courts with a multiplicity of suits, subject themselves to the hazard of the dissipation of property, continue the uncertainty of final settlement, requires a belief in a radical revision of legislative policy, not justified by specific statutory language.

The order sustaining the demurrer is reversed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.